Clarence J. BASSLER, Jr., et al.,
Appellants,

v.

Herschel S. ARROWOOD, Individually
and as a Co-Executor under the Last
Will and Testament of Archibald G.
Bush, Deceased, and as a former direc-
tor of the Bush Foundation, et al., Ap-
pellees,

and

Thomas Malone, as Clerk of the Probate
Court, Ramsey County, Minnesota,
et al., Nominal Appellees.

No. 73–1378.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1974.

Decided July 8, 1974.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1974.

Thomas V. Koykka, Cleveland, Ohio, for appellants.

Richard G. Mark, Sp. Asst. Atty. Gen., Richard H. Kyle, and Neil P. Convery, St. Paul, Minn., for appellees.

Before GIBSON, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

This diversity suit was brought by the executors of the estate of Mrs. A. G. Bush. The suit is against the executors ,of the estate of Mrs. Bush's husband, the Bush Foundation, and the foundation's directors and former directors, two of whom are the executors of the A. G. Bush estate. The cause of action is basically for fraud in the distribution of the husband's estate and in the operation of the Bush Foundation, The district court [1] dismissed the complaint on the merits citing the alternative bases of res judicata, collateral estoppel and abstention. We affirm but remand with instructions.

This is a complicated case which began in 1966 with the death of A. G. Bush. We set out the facts that are essential to an understanding of the issues.

A. G. Bush was one of the founders of Minnesota Mining and Manufacturing Company and had thereby amassed a sizeable fortune.[2] In his will, to which Mrs. Bush consented, A. G. Bush left the bulk of his estate to the Bush Foundation, a nonprofit Minnesota corporation that he had established in 1953. Shortly following Mr. Bush's death in 1966, a controversy arose among Mrs. Bush, the executors of the husband's estate, and the directors of the Bush Foundation. The conflict arose due to delays in making the estate distributions to the foundation. Mrs. Bush feared that the executors and directors were not carrying out her husband's wishes (at that time the foundation directors included executors Arrowood and Dickman).

Mrs. Bush, in order to get the administration back on what she thought was the right track, threatened to renounce her consent to her husband's will which would have substantially reduced the residuary bequest to the foundation. However, a compromise settlement was reached between Mrs. Bush and the executors and directors. Under the settlement agreement Mrs. Bush agreed to give up her right to renounce the will.[3] The Bush Foundation and its directors agreed to amend the Articles and By-Laws setting up a bicameral board of directors. There were established four class A directors and three class B directors. Mrs. Bush and two persons acceptable to her formed the class B group. In order for the foundation to perform any of its charitable activities, a majority vote of each group was required. The effect was to give

---

1. The United States District Court for the District of Minnesota, the Honorable William G. Juergens, Eastern District of Illinois, sitting by designation.

2. The figures as to the original value of the estate range from \$130–\$150 million. The estate as now held by the executors, after three partial distributions to the Bush Foundation, is apparently worth approximately \$85 million.

3. Among other things, the settlement agreement further provided that the executors, would pay Mrs. Bush \$2,100,000 to settle a dispute over a Florida property which the will had provided to Mrs. Bush as a residence for life "free of charge."

Mrs. Bush a veto power over the operation of the foundation.

The settlement agreement was submitted to and approved by order of the Minnesota Probate Court on August 30, 1966. The settlement was also approved by the state court in Florida since ancillary administration of the estate had been filed there.

The compromise and settlement did not last. The executors and directors engaged in activity which Mrs. Bush and the class B directors deemed improper. In January 1968 Mrs. Bush and the other class B directors brought an action in Ramsey County, Minnesota District Court. The complaint alleged that the case was brought by the class B directors in their representative capacity. A review of the complaint in the state court suit demonstrates that appellants fairly represent the prayer for relief when they state in their brief to this court:

The court was asked in the [state court] Complaint to adjudge that The

Bush Foundation *is* the residuary legatee, to enjoin acts of defendants designed to defeat distribution to The Bush Foundation, to remove the Class A Directors for their breaches of duty, and to remove the Executors of the husband's estate for their breaches of duty.

After three days of trial in September 1969, the state court suit was settled. Primarily, the settlement did away with the bicameral board of directors and replaced it with a unicameral board of 16 members, including Mrs. Bush. The settlement was approved by the Ramsey County, Minnesota court and final judgment was entered on April 10, 1970.[4]

On November 3, 1970, Mrs. Bush was adjudged incompetent by the Florida court. On December 2, 1971, the Florida court ordered that Mrs. Bush's executors continue to pursue those remedies which would vindicate Mrs. Bush's rights.[5] Hence, the instant law suit.

4. The judgment concluded in part:
 * * * the above-entitled action, including all claims, counterclaims and cross-claims of or against the parties thereto (including but not limited to defendants Mary Jane Dickman and Herschel S. Arrowood) and against persons not parties hereto with respect to whom claims were asserted in or during the pendency of the action (including, but not limited to, David R. Roberts, Philip Stringer and Walter N. Trenerry) shall be and they are hereby dismissed with prejudice * * *.

5. We think it useful to set out the relevant portions of the Florida court's order:
 * * * it is ORDERED AND ADJUDGED:
 1. That the Co-Guardians of the Property of Edyth D. Bush, a/k/a Mrs. Archibald G. Bush, an Incompetent, are instructed, authorized and directed to commence, continue and pursue, by motions, complaints or other legal proceedings in the Probate and District Courts of the State of Minnesota or in any other appropriate tribunals or courts, such actions as may be appropriate and necessary to set aside and nullify the Decree and Judgment dated April 10, 1970 of the District Court,

Second Judicial District, Minnesota, in Bush, et al v. Arrowood, et al, File No. 356691, and to set aside and nullify the Stipulation and Agreement dated September 17, 1969, and in connection therewith to secure an Order or Judgment that the said matter be again set down for trial so that the issues contained in the Complaint and pleadings therein, together with any amendments or supplements thereto, may be fully tried and the rights of Edyth D. Bush, individually, and as a Director of and on behalf of The Bush Foundation, be finally determined after a trial on the merits; and further to secure such declaratory orders, decrees, judgments or other relief as may be appropriate or necessary to adjudge and determine that the various agreements and promises made to the Ward on or about August 27, 1966, by the Co-Executors of the Estate of Archibald G. Bush, and also by The Bush Foundation, have been and are unperformed, violated, breached, ignored and rendered meaningless in major and material respects, so as to entitle the Ward to renounce the Last Will and Testament of her late husband Archibald G. Bush, and for such other relief as may be appropriate in connection with the foregoing matters and proceedings.

The complaint in the instant case sets out the facts and background leading up to this court action. Thereafter, decree is prayed for as follows:

1. That the Consent of Edyth D. Bush to the Last Will and Testament of Archibald G. Bush under date of April 21, 1965, was not fairly and reasonably obtained and is null and void and without force or effect.

2. Rescinding the agreement of settlement entered into on or about August 27, 1966, between Edyth D. Bush, as surviving spouse of Archibald G. Bush, the defendants Herschel S. Arrowood and Mary Jane Dickman, as Co-Executors of the Estate of Archibald G. Bush, and the defendant The Bush Foundation and determining that the plaintiff is entitled to renounce the Last Will and Testament of Archibald G. Bush.

3. Vacating and declaring void the Stipulation dated September 17, 1969, and the Judgment and Decree entered thereon on the 10th day of April, 1970, in the District Court of Ramsey County, Minnesota, in that certain action entitled Edyth Bush, etc., et al, Plaintiffs, vs. Herschel S. Arrowood, etc., et al, being File No. 356691, and requiring the defendant The Bush Foundation and the members of its Board of Directors named as defendants herein to amend its Articles of Incorporation and its By-Laws so as to restore the bicameral principle of its Board of Directors.

4. Vacating and setting aside the Interlocutory Decree Relative to Purported Renunciation of Will entered in the Probate Court of Ramsey County, Minnesota, on the 1st day of March, 1972, and requiring said Court to enter its Decree in accordance with the determination of this Court in the premises.

5. For an award of damages against such defendants, jointly and severally, in the sum of one hundred million dollars ($100,000,000.00), or such other amount as the Court and jury may determine.

We begin our analysis of this case with the observation that persuasive argument can be made that the federal court lacks jurisdiction in this matter.

█ Federal courts have no probate powers per se. This is true even when the requisite diversity of citizenship has been shown. Kausch v. First Wichita National Bank of Wichita Falls, Texas, 470 F.2d 1068, 1069 (CA5 1973). The federal courts do have jurisdiction

* * * to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. Markham v. Allen, 326 U.S. 490, 494, 66 S. Ct. 296, 298, 90 L.Ed. 256 (1946).

See also Warner v. First National Bank of Minneapolis, 236 F.2d 853, 858 (CA8 1956). Where the action is clearly in personam, federal courts have the power to adjudicate the controversy. Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466–467, 59 S.Ct. 275, 83 L.Ed. 285 (1939); Harris v. Pollock, 480 F.2d 42, 44 (CA10 1973); Lamberg

2. That the Co-Guardians of the Property herein are instructed, authorized and directed to litigate and defend in the Probate Court of Ramsey County, Minnesota, or in the District Courts of the State of Minnesota, or in any other appropriate courts or tribunals, any and all interests of the Ward as may be or become involved in the proceedings now pending or hereafter filed in the said Probate Court or in any other courts or tribunals to ad-

judge or declare that there has been no effective renunciation by the Ward of the Will of her late husband Archibald G. Bush and that she and her guardians have no further interest in the estate or its assets, with the purpose of sustaining and validating the renunciations heretofore filed by her or on her behalf on August 30, 1966 and on November 23, 1971 in the Probate Court of Ramsey County, Minnesota.

v. Callahan, 455 F.2d 1213, 1216 (CA2 1972); Starr v. Rupp, 421 F.2d 999, 1004 (CA6 1970); Wright, Federal Courts § 25 at 85 (1970). The test is easier to state than it is to apply. The differences are slight. As the court pointed out in Starr v. Rupp, *supra*:

> The cases thus endeavor to distinguish between direct interferences with or control of the res and adjudication of the rights of individuals who have an interest in the res. This line of distinction is not always clear. 421 F.2d at 1005.

The relief desired by the complaint in the instant case [6] would in substantial part seem to require interference with the prior jurisdiction of the Minnesota Probate Court and would in fact conflict with that court's decisions. *Compare* Starr v. Rupp, *supra*, 421 F.2d at 1006. Nevertheless, the allegations of the complaint are also grounded upon the fraud of the directors of the Bush Foundation in inducing Mrs. Bush to enter into the agreement of settlement in August 1966 and the stipulation dated September 17, 1969. These allegations would be cognizable outside the probate court and in fact were brought in the Ramsey County, Minnesota suit.

■ Where a claim is enforceable in a state court of general jurisdiction, the argument becomes more persuasive that federal diversity jurisdiction should be assumed. Lamberg v. Callahan, *supra*, 455 F.2d at 1216; *compare* Lathan v. Edwards, 121 F.2d 183, 184 (CA5 1941).

■■ The jurisdiction issue in this case is close. The district court, relying on the Minnesota case of Bulau v. Bulau, 208 Minn. 529, 294 N.W. 845 (1940), determined that there were sufficient allegations to show the existence of jurisdiction. We agree that the *Bulau* case lends support to the proposition that where the cause of action is based upon fraud the district court has jurisdiction to entertain the claim even though it affects probate matters.[7] Furthermore, because appellant relies heavily upon the allegation that the rights asserted in this suit are personal rights of Mrs. Bush, we think that jurisdiction lies in federal court under the authorities earlier cited.

Finding jurisdiction we turn to the question of whether the district court in the exercise of its discretion should have declined to entertain this suit. *See* Markham v. Allen, 326 U.S. 490, 495, 66 S.Ct. 296, 90 L.Ed. 256 (1945); Burford v. Sun Oil Company, 319 U.S. 315, 63 S. Ct. 1098, 87 L.Ed. 1424 (1943); State Farm Mutual Automobile Insurance Company v. Bonwell, 248 F.2d 862, 865 (CA8 1957).

■ Federal courts choose not to exercise their jurisdiction for numerous reasons. See cases cited in Wright, Federal Courts § 52 (1970). One of those instances is when the federal court action would needlessly interfere with the state's administration of its own affairs. Alabama Public Service Commission v. Southern Railroad Company, 341 U.S. 341, 349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Company, *supra*; Tomiyasu v. Golden, 358 F.2d 651, 655 (CA9 1966). We believe that the instant case presents a situation fitting the mold for abstention.

The area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be decided by state courts. *Cf.*

---

6. We refer primarily to paragraphs 1, 2 and 4 of the complaint set out above.

7. Since the Minnesota court held that the state district court had jurisdiction in a situation analogous to the instant case, the federal court here would have jurisdiction if diversity requisites are met.

We, of course, give deference to the district court's interpretation of local law. Highway Construction Company v. Moses, 483 F.2d 812, 814 n. 2 (CA8 1973); Owens v. Childrens Memorial Hosp., 480 F.2d 465, 467 (CA8 1973).

Magaziner v. Montemurs, 468 F.2d 782, 787 (CA3 1972); Downie v. Pritchard, 309 F.2d 634, 636 (CA8 1962).

It would be improper for the federal courts to entertain a collateral attack on the judgments of the probate court or the district court in this case. As the district court recognized, the procedures for attacking these judgments are available to appellants in direct attacks upon those judgments for fraud or misrepresentation. Pangalos v. Halpern, 247 Minn. 80, 76 N.W.2d 702 (1956); Bulau v. Bulau, *supra*. In addition, the Minnesota Supreme Court has pending before it an appeal from the Ramsey County, Minnesota District Court which appeal may resolve the issues in the instant case.[8] We should not interfere with that procedure. Reichman v. Pittsburg National Bank, 465 F.2d 16, 18 (CA3 1972); Dreyfus v. First National Bank of Chicago, 424 F.2d 1171, 1175 (CA7 1970).

We need not decide whether the personal rights of Mrs. Bush have been adjudicated and are therefore res judicata. The trial court felt that they were. The Minnesota district court in its memorandum and order, which is now on appeal to the Minnesota Supreme Court, indicates that the personal rights of Mrs. Bush have been adjudicated.[9] The Judgment and Decree in the state court settlement (April 10, 1970) also so indicates.[10] *See also* Bush v. Arrowood, 293 Minn. 243, 198 N.W.2d 263, 265 (1972).

The Minnesota state courts are manifestly familiar with this litigation. The issues are intertwined with the probate and administration of the Bush estate. Whatever remedies appellants have can and should be pursued in the state courts. This case presents a situation where it is within the sound discretion of the federal district court to abstain.

Appellant argues that even if abstention is proper it was improper to dismiss. We disagree. Intervention of the federal courts is not necessary in this case for the protection of federal rights. Alabama Public Service Commission, *supra*, 341 U.S. at 349, 71 S.Ct. 762. Where, as here, the federal court abstains to avoid interference with state activities, and no federal interest requires retention of jurisdiction, dismissal is proper. If federal rights of any party are infringed, the normal state court review and certiorari to the United States Supreme Court are available. Tomiyasu v. Golden, *supra*, 358 F.2d at 655; Wright, Federal Courts § 52 at 200 (1970); *see also* Roy v. Jones, 484 F.2d 96, 101 (CA3 1973) (Aldisert, Circuit Judge, concurring).

There remains the question of whether the district court's final judgment was proper. The court's memorandum and order clearly reflects that the dismissal was without prejudice to the bringing of the appropriate actions in state court. The judgment, however, dismissed the action on the merits. We have said that it is "inappropriate to make a determination on the merits while applying the abstention doctrine." First American Bank & Trust Company v. Ellwein, 474 F.2d 933, 936 (CA8 1973).

Accordingly, we affirm the decision of the district court solely upon the basis of abstention. We remand the case to the district court for the single purpose of modifying the judgment to reflect abstention as the basis for dismissal rather than a decision on the merits. *Ellwein, supra; Alabama Public Service Commission, supra.*

---

8. In March of 1972 the Ramsey County Probate Court entered an order denying permission to the co-guardians of Mrs. Bush to file renunciation of the husband's will. The ruling was affirmed by the state district court. The case is now on appeal to the Minnesota Supreme Court. Appellants' legal and factual claims are substantially similar to the claims made in the instant case.

9. See note 8 *supra*.

10. See note 4 *supra*.