610 F.2d 471
 61 A.L.R.Fed. 524
 Daniel F. RICE, Jr. and Mary L. Rice, Plaintiffs-Appellees,
v.
The RICE FOUNDATION, an Illinois Corporation, et al.,
Defendants-Appellants.
Daniel F. RICE, Jr., Plaintiff-Appellee,
v.
The RICE FOUNDATION, an Illinois Corporation, et al.,
Defendants-Appellants.
 Nos. 79-1955, 79-1956.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 25, 1979.
Decided Dec. 4, 1979.
 
 Don H. Reuben, Chicago, Ill., for defendants-appellants.
 Louis G. Davidson, Chicago, Ill., for plaintiffs-appellees.
 Before SPRECHER, Circuit Judge, VAN DUSEN,* Senior Circuit Judge, and BAUER, Circuit Judge.
 SPRECHER, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court denying the motion of certain attorneys to appear as counsel for the defendant Rice Foundation and granting the motion of the plaintiffs and various defendants to disqualify these attorneys as counsel for the Foundation. We will not address the propriety of this order at this time because there is a serious question as to the subject matter jurisdiction of the federal court in these cases. In addition, a decision of the Illinois Appellate Court handed down immediately prior to oral argument in this appeal[1] substantially alters the factual context in which the district court's order was entered. Accordingly, we vacate the district court's order and remand these cases for consideration of the jurisdictional issue; if subject matter jurisdiction exists and is exercised, the order must be reconsidered in light of the recent Illinois Appellate Court decision.
 
 
 2
 * Our disposition of this appeal obviates the need for a detailed recital of the complicated factual background of the disqualification order. A brief description of the nature and course of the proceedings below and of the related state court proceedings will be sufficient for purposes of our ruling.
 
 
 3
 These diversity actions involve a dispute as to the proper distribution of the estates of two decedents, Daniel Rice, Sr., and his wife, Ada Rice. The plaintiff, Daniel Rice, Jr., is the adopted son and sole heir of the decedents; the defendant, Rice Foundation, is an Illinois non-profit corporation, founded by the Rices, which is the principal beneficiary of the wills of Daniel, Sr., and Ada. The gist of the plaintiff's claim is that he was deprived of his rightful share of the estates of his parents by acts on the part of various defendants amounting to the exertion of undue influence upon both decedents and fraud in concealing his rights from him. He seeks damages, a declaration that Ada's will is invalid, and any other legal and equitable relief the court deems appropriate.
 
 
 4
 A number of suits are pending in the Illinois state courts regarding the disposition of the Rice estates, including the probate proceedings for both estates. During the course of one of these suits, it was brought to the attention of the state court that there was a dispute as to which of two competing groups of directors was entitled to control the Rice Foundation. This dispute underlies much of the conflict which has arisen during the federal proceedings. The competing groups of directors are the Nolan directors, represented by Reuben & Proctor, and the Medical Institutions directors, represented by Sonnenschein, Carlin, Nath & Rosenthal. Each group bases its claim to control on a different set of purported by-laws of the Foundation. The state court ruled that the by-laws offered by the Medical Institutions group (the 1974 by-laws) were the legitimate by-laws of the Foundation. This ruling had the effect of removing the incumbent Nolan group from control and placing the Foundation under the direction of the Medical Institutions. Subsequently, the Illinois Appellate Court stayed the lower court's ruling and then, on the day before oral argument in this court, reversed the ruling as to control of the Foundation.
 
 
 5
 The federal suits on appeal here were pending while this control struggle was proceeding in the state courts; the status of the state court dispute determined, to a large extent, which attorneys attempted to represent the Rice Foundation.[2] After the initial state court decision vesting control of the Foundation in the Medical Institutions group, that group's counsel, the Sonnenschein firm, was permitted to appear as the Foundation's counsel in the court below. When the Illinois Appellate Court stay was issued, Reuben & Proctor, on behalf of the Nolan group, moved for leave to appear as the Foundation's counsel on the ground that the stay had the effect of returning control to the Nolan group. This motion was opposed both by the Medical Institutions group and the plaintiffs on the grounds that the stay did not return control to the Nolan group and that representation of the Foundation by counsel for the Nolan group would give rise to substantial conflicts of interest.[3] The district court ruled that because of the potentially differing interests of Nolan and the Foundation in the litigation before it, Reuben & Proctor, having represented the Nolan group in the state court control dispute, must be disqualified from representing the Foundation in the federal litigation.[4] The court decided that, in view of the control dispute, the only reasonable course would be to appoint independent counsel for the Foundation. The order appealed from directed the competing groups to seek agreement on such independent counsel; if no agreement could be reached, the district court suggested that it would undertake to appoint counsel for the Foundation. An immediate appeal was taken from this order.
 
 II
 
 6
 * The initial inquiry in any suit filed in federal court must be whether the federal court possesses subject matter jurisdiction. None of the parties to this appeal raise the jurisdictional issue and the record reveals that the court below did not explicitly consider it. Because subject matter jurisdiction determines whether a court has power to act in a given case, a federal court, including a court of appeals, must raise the issue on its own motion where the parties fail to bring it to the court's attention. See City of Kenosha v. Bruno, 412 U.S. 507, 511-12, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Basso v. Utah Power and Light Co., 495 F.2d 906, 909-10 (10th Cir. 1974); Fed.R.Civ.Pro. 12(h)(3).
 
 
 7
 The cases on appeal here were filed in the Northern District of Illinois with jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332(a).[5] It is undisputed that the plaintiffs are citizens of California, that none of the defendants are citizens of California, and that the amount in controversy exceeds $10,000. The complaints, therefore, allege the facts necessary to establish federal diversity jurisdiction. There are, however, well-established exceptions to the diversity jurisdiction of the federal courts which may require dismissal of a suit for lack of jurisdiction even where the requisite citizenship and amount in controversy have been established. Lamberg v. Callahan, 455 F.2d 1213, 1216 (2d Cir. 1972); Buechold v. Ortiz, 401 F.2d 371, 372-73 (9th Cir. 1968); C. Wright, Handbook of the Law of Federal Courts § 25, at pp. 97-99 (3d ed. 1976). Of particular importance in this appeal is the judicially created exception which places matters of probate and estate administration outside the power of the federal courts. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); 1A Moore's Federal Practice P 0.201, at p. 2023 (2d ed. 1979); P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, The Federal Courts and the Federal System 1186-88 (2d ed. 1973).
 
 
 8
 The probate exception is historical in origin, having its roots in the fact that matters of probate and administration were, in 1789, within the exclusive jurisdiction of the English ecclesiastical courts and outside the reach of the High Court of Chancery and the common law courts. The Supreme Court has held that Congress, in drafting the jurisdictional section of the Judiciary Act of 1789, intended that this limitation be imposed upon the federal courts, and that probate matters be within the exclusive jurisdiction of the state courts.[6] Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); Starr v. Rupp, 421 F.2d 999, 1004 (6th Cir. 1970). The exception has survived to the present and has been recognized in all of the courts of appeals in which the issue was presented, including this court. See Republic of Iraq v. First National Bank of Chicago, 350 F.2d 645, 648 (7th Cir. 1965), Cert. denied, 382 U.S. 982, 86 S.Ct. 556, 15 L.Ed.2d 556 (1966).[7]
 
 
 9
 Despite its long history and undisputed viability, the probate exception is not easily applied to particular cases. It is clear that "pure" probate matters are outside federal jurisdiction. Waterman v. The Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80 (1909); Mitchell v. Nixon, 200 F.2d 50, 51 (5th Cir. 1952). It is equally clear, however, that "(t)he exception from the diversity jurisdiction as to probate matters is far from absolute." C. Wright, Supra, at 98 (citations omitted). In fact, the federal courts construe the meaning of "probate" quite narrowly to limit the scope of the exception. Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 514 (2d Cir. 1973); Akin v. Louisiana National Bank of Baton Rouge, 322 F.2d 749, 751 (5th Cir. 1963). As formulated by the Supreme Court, the touchstone in applying the exception is the desire of the federal courts to avoid interference with state probate proceedings:
 
 
 10
 (F)ederal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.
 
 
 11
 Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (citations omitted).
 
 
 12
 Once a suit can be characterized as not involving "pure probate," the inquiry then becomes whether resolution of the suit by the federal court will result in "interference" with the state probate proceedings or the assumption of general probate jurisdiction. The courts of appeals have approached this inquiry in two ways. The first approach, developed by the Fifth Circuit, looks to the nature of the plaintiff's claim. If the plaintiff's claim rests upon an assertion that a decedent's will is invalid, the federal court will be required to rule upon the validity of the will and thus will directly interfere with state court probate. However, where the plaintiff admits the will's validity and merely asserts a right to share in the distribution of the estate, the federal court can decide the suit before it without any direct impact upon state probate of the will. Akin v. Louisiana National Bank of Baton Rouge, 322 F.2d 749, 753-54 (5th Cir. 1963); Mitchell v. Nixon, 200 F.2d 50, 51-52 (5th Cir. 1952).[8] The plaintiff's position vis-a-vis the will is the determinative factor under this approach.
 
 
 13
 The second approach, rather than examining the plaintiff's claim, looks to the route the suit would have taken had it been brought in state court. As the Second Circuit held:
 
 
 14
 The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim Inter partes, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.
 
 
 15
 Lamberg v. Callahan, 455 F.2d 1213, 1216 (2d Cir. 1972). Thus, the federal courts may exercise diversity jurisdiction over suits which "arise out of or pertain to probate proceedings, but are independent in character and not merely incidental or ancillary to the probate." 1A Moore's Federal Practice P 0.157(4.-11), at p. 171. Of the federal courts which have addressed the issue, most have opted for this approach to the jurisdictional inquiry.[9]
 
 
 16
 We express no view at this time as to whether either or both approaches should be used by the district court on remand, or whether an entirely new test should be devised. The approaches outlined above are not hard and fast rules; rather, they were formulated to aid in the resolution of the difficult jurisdictional issue presented when probate-like actions are filed in federal court. They are set out here for illustrative, not directive, purposes.[10]
 
 
 17
 While it is not uncommon for courts of appeals to raise jurisdictional issues on their own motion and to resolve them without remand, we believe that remand is appropriate in this case for a number of reasons. First, shortly before the notice of appeal was filed in this court, a motion to dismiss for lack of subject matter jurisdiction was filed below.[11] The record reveals that the district court has not had an opportunity to consider this motion. In view of this, the district court should be given the first opportunity to resolve the jurisdictional issue. Second, as the discussion above reveals, application of the probate exception requires detailed analysis of state law in terms of both the characterization of the plaintiff's claims and the niceties of state probate procedure. This analysis of local law and policy can be conducted most effectively in the first instance by the trial court.[12] See Ledbetter v. Taylor, 359 F.2d 760, 762 (10th Cir. 1966). Finally, "(w)e have had the benefit of neither briefs, arguments, nor explicit consideration by the District Court of the jurisdictional questions" presented in these cases. City of Kenosha v. Bruno, 412 U.S. 507, 514, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109 (1973). A jurisdictional issue as complex as the one presented here is best resolved after careful consideration of local law and policy, the facts necessary to identify the underlying issues raised by plaintiff's claims, and the arguments of the parties.[13] The district court is better equipped to conduct this inquiry.
 
 B
 
 18
 There is yet another factor requiring remand in these cases. Even where a particular probate-like case is found to be outside the scope of the probate exception, the district court may, in its discretion, decline to exercise its jurisdiction. The nature of the issues presented in such cases can make discretionary abstention particularly appropriate. The Eighth Circuit has noted:
 
 
 19
 The area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be decided by state courts.
 
 
 20
 Bassler v. Arrowood, 500 F.2d 138, 142 (8th Cir. 1974), Cert. denied, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975).
 
 
 21
 The fact that a federal suit may not directly interfere with state probate proceedings merely permits the exercise of federal jurisdiction, it does not require it. We agree with the Second Circuit that the scope of the probate exception does not necessarily define the area in which the exercise of federal judicial power is appropriate:
 
 
 22
 (T)here is particularly strong reason for abstention in cases which, though not within the exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since like those within the exception, they raise issues "in which the states have an especially strong interest and a well-developed competence for dealing with them."
 
 
 23
 Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973) (citations omitted).
 
 
 24
 Discretionary abstention in probate-related matters is suggested not only by the strong state interest in such matters generally but also by special circumstances in particular cases. Where the state courts are already familiar with the litigation before the district court and the federal suit is intertwined with state court proceedings, the district court may properly decline to exercise its jurisdiction. Bassler, supra, 500 F.2d at 143. The procedural context of the cases before us indicates that abstention is an issue deserving the district court's careful attention.
 
 
 25
 On remand, the district court must first consider whether either or both of these suits are within the probate exception.[14] If the district court, after this inquiry, finds that federal jurisdiction does extend to all or some portion of this litigation, it must then decide whether abstention principles indicate that this litigation would be more appropriately handled in the state courts.
 
 III
 
 26
 If this litigation remains in federal court after the jurisdictional issue is resolved, the district court must then reconsider its disqualification order in light of the Illinois Appellate Court decision in In the Matter of the Estate of Rice, Deceased, etc., 77 Ill.App.3d 641, 33 Ill.Dec. 73, 396 N.E.2d 298 (2d Dist. 1979). Throughout the federal litigation, the parties apparently have considered the state court control struggle to be intimately related to the selection of counsel for the Rice Foundation. In fact, after the initial state court ruling vesting control in the Medical Institutions directors, counsel for the Nolan group stated:
 
 
 27
 At this precise moment, (counsel for the Nolan group) do not have the right to represent the Rice Foundation in this Court since the (state court decree) is admittedly operative. However, this situation would change dramatically in the event the Appellate Court does grant the stay or if the ultimate result in the Appellate Court was a reversal.
 
 
 28
 Memorandum in Support of Motion of Kirkland & Ellis to Appear as Counsel for the Rice Foundation, filed March 14, 1978, at 3.[15] To be considered on remand is whether the "situation (has) change(d) dramatically" since "the ultimate result in the Appellate Court was a reversal."
 
 
 29
 The district court, initially at least, shared this perception of the situation. The record reveals numerous instances in which the district judge expressed his view that selection of counsel for the Foundation was inextricably linked with the state court control dispute.[16] In addition, the district court will now have the opportunity to consider memoranda, to be submitted by the parties in accordance with the district court's order, on the issue whether the district court has authority to appoint counsel for the Foundation. On remand, therefore, the district court must consider the significance of the Illinois Appellate Court's decision and, if it finds that neither party should be allowed to select counsel for the Foundation, it must then decide whether it has that power.
 
 
 30
 We vacate the disqualification order appealed from in these cases and remand for consideration of the subject matter jurisdiction of the federal court. If jurisdiction exists and is exercised, the district court must then consider the effect on the disqualification order of the Illinois Appellate Court ruling and its own power to appoint independent counsel for the Rice Foundation. Each party shall bear its own costs on this appeal.
 
 
 31
 Vacated and remanded.
 
 
 
 *
 Senior Circuit Judge Francis L. Van Dusen of the United States Court of Appeals for the Third Circuit is sitting by designation
 
 
 [1]
 In the Matter of the Estate of Rice, Deceased, etc., 77 Ill.App.3d 641, 33 Ill.Dec. 73, 396 N.E.2d 298 (2d Dist. 1979)
 
 
 [2]
 The federal suits on appeal here were filed in 1977. The record reveals that since that time, apart from sporadic discussion of discovery matters, the attention of the district court has been occupied primarily with the appearance, withdrawal, and disqualification of various attorneys for various parties
 
 
 [3]
 A conflict was also asserted between Mr. Reuben's position as a trustee of Northwestern University and his firm's appearance as counsel for the Rice Foundation. Northwestern University is one of the members of the Medical Institutions group involved in the struggle for control. The district court did not rely on this asserted conflict, focusing instead upon the state court representation of the Nolan group by Reuben & Proctor. In view of our disposition of this appeal, we express no opinion as to the propriety of the district court's reliance, or lack thereof, on either alleged conflict
 
 
 [4]
 The description in the text of the events leading up to the disqualification order is greatly simplified. Since we do not reach the merits of the disqualification issue, this simplified description is sufficient for purposes of this opinion
 
 
 [5]
 Section 1332(a) is the general grant of diversity jurisdiction and provides:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between
 (1) citizens of different States;
 (2) citizens of a State, and foreign states or citizens or subjects thereof; and
 (3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.
 
 
 [6]
 This limitation of jurisdiction was implicit in the language of the Judiciary Act of 1789 which conferred jurisdiction in "suits of a civil nature at common law or in equity." This language was given meaning by reference to the jurisdiction in 1789 of the English common law and chancery courts; since probate matters were outside the jurisdiction of both, they were outside the jurisdiction of the federal courts in this country. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); C. Wright, Supra, at 97. Although the wording of the jurisdictional grant has since been changed to "all civil actions," 28 U.S.C. § 1332(a), this phrase is given the same meaning as the language of the 1789 Act. Jackson v. United States National Bank, 153 F.Supp. 104, 107 (D.Or.1957). The exception, therefore, is still with us, reconfirming Mr. Justice Frankfurter's observation that "legal history still has its claims." Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 609, 62 S.Ct. 736, 754, 86 L.Ed. 1037 (1942) (Frankfurter, J., concurring)
 It has been suggested that the probate exception is based upon Article III of the federal Constitution, the argument being that because probate matters were outside English legal and equitable jurisdiction they are not "cases or controversies" within the meaning of Article III. Galleher v. Grant, 160 F.Supp. 88, 94 (N.D.Ill.1958). Because the jurisdictional grant in 28 U.S.C. § 1332(a) is given the same meaning as that in the 1789 Judiciary Act, it is unnecessary in this case to determine the true basis for the exception. We note, however, that the weight of authority clearly supports the statutory basis.
 
 
 [7]
 See also Starr v. Rupp, 421 F.2d 999 (6th Cir. 1970); Ledbetter v. Taylor, 359 F.2d 760 (10th Cir. 1966); Beach v. Rome Trust Co., 269 F.2d 367 (2d Cir. 1959); Mitchell v. Nixon, 200 F.2d 50 (5th Cir. 1952); Bassler v. Arrowood, 500 F.2d 138 (8th Cir. 1974), Cert. denied, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975)
 
 
 [8]
 The Fifth Circuit approach has its roots in the Supreme Court's decision in Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80 (1909). In Waterman, federal jurisdiction was supported by the fact that the plaintiff did not seek to set aside the validity of probate of the will. See Akin, supra, 322 F.2d at 754
 
 
 [9]
 See, e. g., Ledbetter v. Taylor, 359 F.2d 760, 761 (10th Cir. 1966); Fakouri v. Cadais, 147 F.2d 667, 670 (5th Cir.), Cert. denied, 326 U.S. 742, 66 S.Ct. 54, 90 L.Ed. 443 (1945); Bassler v. Arrowood, 500 F.2d 138, 142 (8th Cir. 1974), Cert. denied, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975). Accord, C. Wright, Supra, § 25 at p. 99. This approach probably has its origin in language in Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664 (1918)
 
 
 [10]
 The district court also may find it helpful on remand to consider reported cases involving similar factual circumstances. For example, in O'Donnell v. Dunspaugh-Dalton Foundation, 391 F.2d 226 (5th Cir. 1968), a suit seeking to set aside a bequest to a charitable foundation on grounds of undue influence and fraud was dismissed for lack of subject matter jurisdiction. Similarly, in Bassler v. Arrowood, 500 F.2d 138 (8th Cir. 1974), Cert. denied, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975), a suit challenging a bequest to a charitable foundation in the midst of a state court control dispute was dismissed on the basis of abstention. Facially both cases bear a remarkable resemblance to the cases before us
 
 
 [11]
 This motion to dismiss was filed on July 25, 1979; it was reasserted in Beatrice Sheridan's Response to Notice to Produce, filed on August 10, 1979, and in Continental Bank's Response to Plaintiff's Request to Produce Documents, filed on August 13, 1979. The disqualification order was filed on August 9, 1979, and the notice of appeal was filed on August 14, 1979
 The record also reveals that a motion to dismiss for lack of jurisdiction was filed on December 8, 1977. A memorandum filed in support of the motion explicitly raises the probate exception to federal diversity jurisdiction. Apparently, no action has been taken on this motion.
 
 
 [12]
 The opinion in Jackson v. United States National Bank, 153 F.Supp. 104, 112-16 (D.Or.1957) provides an example of the detailed analysis of state law which may be necessary in such cases
 
 
 [13]
 The record reveals that the parties themselves consider at least one of the federal suits little more than a will contest. Plaintiff's counsel described the suit as "involv(ing) a will contest. It is an in rem action," Transcript, November 22, 1977, at 9, and as "a will contest case." Transcript, February 22, 1978, at 44. Counsel for one of the defendants agreed, terming the suit "essentially a will contest proceeding and codicil contest proceeding." Id. at 49. District Judge Marshall, involved in some of the proceedings below, shared this perception, remarking that "number four alleges that Ada was incompetent and couldn't make a valid will, and that her will is invalid. . . ." Judge Marshall felt he was presiding over "a good old-fashioned family fight. . . ." Transcript, November 28, 1977, at 3, 7
 
 
 [14]
 We note in passing that the district court might find that certain of the plaintiff's claims belong in state court while others, at least on their face, may appropriately be considered in federal court. Such a bifurcation of the litigation is not inherently improper. See Jackson v. United States National Bank, 153 F.Supp. 104, 116 (D.Or.1957). It is clear, however, that if allegations which could form the basis for an independent suit are predicated upon a probate issue, such as the validity of a will, the entire suit should be dismissed. Kausch v. First Wichita National Bank, 470 F.2d 1068, 1071 (5th Cir. 1973)
 
 
 [15]
 The firm of Kirkland & Ellis originally represented the Nolan group. This representation was transferred to Reuben & Proctor after the Nolan group attorneys left the Kirkland firm and formed Reuben & Proctor
 
 
 [16]
 See, e. g., Transcript, March 3, 1978, at 12-13, 29, 33; Transcript, March 14, 1979, at 4-5, 7; Transcript, April 4, 1979, at 16-18. In the disqualification order, the district court relied solely on the finding of a potential conflict of interest and expressly stated that the control dispute was not relevant in these cases. It is clear, however, that someone must select counsel for the Foundation. Under ordinary circumstances, the selection would be made by those entitled to control according to state law. While the state court rulings may not affect the alleged conflicts of interest, they may indicate which group is presumptively entitled to select counsel for the Foundation. The district court must clarify its position on the relationship between the state court control dispute and the selection of counsel for the Foundation. The district court also must consider whether it has the authority to appoint counsel for the Foundation in light of the peculiar nature of the litigation before it