George **PAPPAS**, Plaintiff,

v.

June **TRAVLOS**, Defendant.

No. 87 C 1102.

United States District Court,
N.D. Illinois, E.D.

April 30, 1987.

Chris Averkiou, Chicago, Ill., for plaintiff.

Murray L. Box, Evanston, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

George Pappas ("Pappas") has sued June Travlos ("Travlos"), relying on this District Court's diversity-of-citizenship jurisdiction over the controversy between the parties. Travlos has moved to dismiss the action in reliance on the "probate exception" to diversity jurisdiction. For the reasons stated in this memorandum opinion and order, the motion to dismiss is granted.

### Facts [1]

On May 16, 1980 both Pappas and Travlos (referred to as "Tasia Travlos") were named among the contingent beneficiaries in an Illinois land trust established by their mother Helen Pappas ("Helen"), with each to receive an undivided one-fifth interest in the event of Helen's death during the trust's existence. That designation took the form of an agreement between Helen and the corporate trustee, Chicago Title and Trust Company ("Chicago Title"), so amending the original land trust agreement. Because of the unique character of the Illinois land trust, under which (a) the legal and equitable title to its real estate res are vested in the corporate trustee and (b) the beneficiaries have only the right to the earnings, avails and proceeds of the real estate and the power to direct the trustee as to its disposition,[2] two consequences flowed from Helen's original trust agreement and May 16 amendment with Chicago Title:

1. None of the three parcels of real estate that were the subject matter of the land trust would become part of Helen's probate estate in case of her death.

2. Helen's May 16 designation of the future-interest beneficiaries caused Helen's beneficial interest in the land trust to be removed from her probateable es-

---

1. Travlos has submitted several documents necessary to fill out the story left incomplete by Pappas' Complaint. All those documents are undisputed, and both parties have posed their legal arguments in terms of the documents tendered by each. Accordingly this opinion has taken all the parties' documentary submissions into account.

2. See the discussions of the Illinois land trust phenomenon in this Court's recent opinion in *Old Orchard Bank and Trust Co. v. Rodriguez,* 654 F.Supp. 108, 110 & nn. 3 and 4 (N.D.Ill. 1987) and in the Illinois cases cited there.

tate as well, for Illinois law does not regard such designations as testamentary in nature and thus subject to the requirements of the Statute of Wills.

Just a few days after the beneficiary designation (on May 21, 1980), Helen and Chicago Title executed still another document—this one joined in by Travlos—under which Travlos was currently given sole power of direction under the Trust Agreement. By its terms the power of direction was stated to be irrevocable without Travlos' consent, because Travlos' power was characterized as being "coupled with an interest" (the familiar precondition for irrevocable powers at common law). So matters continued to stand at the time of Helen's death on September 28, 1982.

Pappas now claims Travlos has violated her claimed fiduciary obligations to Pappas by selling certain real estate involved in the land trust and converting its proceeds. What he asks is a declaratory judgment as to his rights in the land trust property and proceeds, an accounting, compensatory damages equal to his undistributed share of trust property and punitive damages.

But Pappas did not make full disclosure in his Complaint. What he failed to tell this Court was that Helen's will had appointed Travlos as Executrix and designated as heirs the same persons (Pappas, Travlos, their brother and sister and two nieces) that had been named as land trust beneficiaries on Helen's death. After unsuccessful efforts to sell the real estate following Helen's death, and with the parties then entangled in disputes and litigation over Helen's various testamentary and other designations of her property interests, all the beneficiaries (including Pappas and Travlos) entered into a March 24, 1986 written settlement agreement (the "Agreement," App. 1 to this opinion) establishing each beneficiary's distributive share (indeed, Pappas received 22½% rather than the 20% provided for in the land trust agreement). Most importantly:

1. All the beneficiaries—including Pappas and Travlos—agreed to treat the property now in dispute as part of Helen's probate estate (Agreement ¶¶ 1 and 6):

1. The Order entered upon March 27, 1985, in HELEN's Decedent's Estate regarding the disposition of real estate formerly owned by Helen and located at 2921 North Pine Grove, Chicago, Illinois; 1714 West Winona Avenue, Chicago, Illinois; and South Ashland Avenue, Chicago, Illinois, ("the Probate Order") shall govern the disposition of its three subject parcels of real estate ("HELEN's Property") in furtherance of this Agreement.

\*  \*  \*  \*  \*  \*

6. The Probate Division of the Circuit Court of Cook County, Illinois, shall retain jurisdiction over HELEN's Decedent's Estate, and that case shall remain open, to the extent necessary to permit execution of this Agreement and enforcement of the covenants set forth herein.

2. What the March 27, 1985 Probate Order referred to in Agreement ¶ 1 had provided was that any funds realized from any sale of the real estate, pending resolution of the then-existing litigation among the parties, would be deposited in escrow at Chicago Title. On September 19, 1985 the Probate Division of the Circuit Court had then approved Travlos' sale of one of the real estate parcels, with the sale proceeds to be made payable to her "in her representative capacity as Executrix of the Estate of Helen Pappas, deceased, for deposit as estate funds in an interest bearing account for the benefit of the Estate and those who have an interest therein, until further order of Court, or agreement of those who have an interest therein."

3. In accordance with the Agreement, on September 30, 1986 the Probate Division of the Circuit Court entered an order by which it caused the Agreement to be "hereby filed and spread of record" and "[took] jurisdiction over the property and proceeds of [the land trust] for the purpose of enforcing said Agreement and all matters related thereto."

4. Less than a month later, on Travlos' motion as Executrix for approval of a partial distribution, the same court ordered a $150,000 partial distribution (derived from the net proceeds of real estate sales—the land trust property) to the beneficiaries (including Pappas) in accordance with the Agreement.

*Jurisdiction of This Court*

In literal terms diversity of citizenship is present here: Pappas is a California citizen while Travlos is an Illinois citizen. What is at issue is whether one of the judicially-created exceptions to the statutorily-conferred jurisdiction in diversity cases applies, so as to compel dismissal of this action. As with the domestic relations exception, such a decision as to the one involved here—the probate exception—calls for an examination of the exception's purpose as articulated by the cases announcing and applying that doctrine.

As developed historically, the jurisdiction of federal courts in cases such as this is recognized only "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court" (*Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946)). Our Court of Appeals explained the objectives of that probate exception to federal jurisdiction at some length in *Dragan v. Miller*, 679 F.2d 712 (7th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). After reviewing the historical background and the practical justifications for what he termed "one of the most mysterious and esoteric branches of the law of federal jurisdiction" (*id.* at 712), Judge Posner said for the court (*id.* at 715):

If a state creates a specialized cadre of judges to administer its probate jurisdiction, this will be a reason for interpreting the probate exception to the federal diversity jurisdiction broadly in that state; the argument from relative expertness will have greater force in such a state than in one where authority in probate matters is exercised by courts of general jurisdiction. Or if a state has decided

that a certain issue may be raised only in the original probate proceeding, this will strengthen the argument from judicial economy by indicating that the state believes that bifurcated consideration of probate-related issues would produce judicial diseconomy. Hence our judgment in the present case may depend to a significant extent on how Illinois has decided to configure its probate jurisdiction.

Because the court then found the action involved there was "'ancillary' to probate in the practical sense that allowing it to be maintained in federal court would impair the policies served by the probate exception to federal diversity jurisdiction" (*id.* at 715–16), the Court of Appeals upheld dismissal of the federal action.

Indeed, *Rice v. Rice Foundation*, 610 F.2d 471, 477–78 (7th Cir.1979) had earlier made it plain that a district court ought in its discretion to decline to exercise jurisdiction in cases where the "probate exception" is not involved in the strictest sense:

Even where a particular probate-like case is found to be outside the scope of the probate exception, the district court may, in its discretion, decline to exercise its jurisdiction. The nature of the issues presented in such cases can make discretionary abstention particularly appropriate.

\* \* \* \* \* \*

The fact that a federal suit may not directly interfere with state probate proceedings merely permits the exercise of federal jurisdiction, it does not require it. We agree with the Second Circuit that the scope of the probate exception does not necessarily define the area in which the exercise of federal judicial power is appropriate....

Discretionary abstention in probate-related matters is suggested not only by the strong state interest in such matters generally but also by special circumstances in particular cases. Where the state courts are already familiar with the litigation before the district court and the federal suit is intertwined with state

court proceedings, the district court may properly decline to exercise its jurisdiction.

Thus this Court may properly dismiss this action either if it falls literally within the probate exception or, failing that, if the *Rice* concept of discretionary abstention applies.

Pappas argues what he seeks to do here is to enforce performance of an inter vivos trust, urging the state probate court has no jurisdiction over that trust. But he ignores two critical factors:

1. All the Illinois case law on which he relies antedated the Illinois statutory and constitutional provisions that now establish a single Circuit Court system with general jurisdiction (see Ill. Const. art. VI § 9). Under Article VI § 20 of the Illinois Constitution of 1870 the authority of the probate court was limited to "all matters in probate, settlement of estates of deceased persons." Now, however, the Probate Division is simply part of the Circuit Court, without any such jurisdictional limitation.

2. Pappas *agreed* to vest the state court with continuing jurisdiction over the identical property he now seeks to embroil in litigation here. Though federal jurisdiction cannot be conferred by consent (federal courts being courts of limited jurisdiction), the Circuit Court is one of *general* jurisdiction. No inhibition exists against a voluntary consent to its jurisdiction, and Pappas will not be heard to argue the agreements he voluntarily entered into—agreements on which the other beneficiaries have relied and the Circuit Court has acted and continues to act—were somehow void or are otherwise to be ignored.

Thus the state court has in fact assumed and is exercising jurisdiction over the property in question, its income and the proceeds of sale—not as technically probatea-ble assets, but unquestionably as ancillary to the probate of Helen's estate—with the full consent and agreement of Pappas and all Helen's other beneficiaries. All that property is being treated—by agreement—as de facto (if not de jure) probate property. This Court's assumption of jurisdiction would conflict with the state court's retention and exercise of jurisdiction, by which the estate was expressly kept open "to permit execution of [the] Agreement and enforcement of the covenants set forth [t]herein."

Under the circumstances here, the teaching of *Dragan* and *Rice*—both separately and together—points to federal abstention. There is no occasion for this Court to interfere with the existing and ongoing administration of the property now being carried on in the Circuit Court of Cook County, expressly under the aegis of its Probate Division. Pappas is welcome to return to that court, upon which he deliberately joined in conferring jurisdiction, for any relief he seeks. This action is dismissed.[3]

EXHIBIT I

AGREEMENT TO SETTLE CLAIMS
REGARDING PROPERTY
DISTRIBUTION

Agreement made this ____ day of ____, 1986, by and between TASIA JUNE TRAVLOS, CHRISTINE BARHOUM, GEORGE C. PAPPAS, THEODORE PAPPAS, JO ANN COVELLI PETERS and THERESA COVELLI KRISTAL, individuals;

WHEREAS, all of the parties to this Agreement are descendants of one HELEN PAPPAS, also known as HELEN PAPACHRISTODOLOU, Deceased ("HELEN"); and

WHEREAS, during her lifetime, HELEN accumulated interests in various properties, both real and personal; and

---

3. Travlos has asked for the imposition of sanctions under Fed.R.Civ.P. ("Rule") 11 for having been put to the trouble and expense of having to do battle a second time, in a second forum, over matters once settled between the parties. Though that issue is hardly free from doubt, the fact remains that Pappas and his counsel could fashion an argument—ultimately unsound but arguably colorable—for retention of jurisdiction here. To avoid the advocacy-chilling potential of Rule 11, this Court generally resolves such legitimate doubts against compelling the losing litigant to pay both sets of lawyers.

WHEREAS, prior to her death, the Court entered an order adjudicating HELEN to be a disabled person, and appointing TASIA JUNE TRAVLOS as HELEN's Limited Guardian (In the matter of the Estate of HELEN PAPPAS, a/k/a HELEN PAPACHRISTODOULOU, Disabled Person, Case No. 81 P 5222, Docket No. 187, Page No. 632, in the Circuit Court of Cook County, Illinois, Probate Division) ("HELEN's Disabled's Estate"); and

WHEREAS, the administration of the Disabled Estate has given rise to certain disputes amongst certain of the parties; and

WHEREAS, the Disabled Estate cannot be closed pending the resolution of said disputes; and

WHEREAS, HELEN died on or about September 28, 1982, and HELEN's Will was subsequently admitted to Probate, (Estate of HELEN PAPPAS, a/k/a HELEN PAPACHRISTODOULOUS, Deceased, Case No. 82 P 7642, Docket No. 887, Page 332, in the Circuit Court of Cook County, Illinois, Probate Division) ("HELEN's Decedent's Estate"); and

WHEREAS, during her lifetime, HELEN made various wills and agreements regarding the disposition of her property interests upon her death ("the Documents"); and

WHEREAS, the parties to this Agreement constitute the entire class of claimants and/or legatees to HELEN's property as established by Illinois law and all of the Documents, and none of the Documents creates any interest in any of HELEN's property on behalf of any person not a party to this Agreement; and

WHEREAS, the parties to the Agreement are the natural objects of HELEN's bounty, and would constitute the entire class of heirs to HELEN's property in the event that HELEN had died intestate; and

WHEREAS, the conflicts between the various Documents have given rise to litigation between certain of the parties to this Agreement; and

WHEREAS, pending the outcome of the litigation, probate of HELEN's estates cannot be completed; and

WHEREAS, the parties have come to an agreement with regard to the settlement of the respective percentage shares to be taken by each of them upon the distribution of HELEN's property; and

WHEREAS, the parties hereto have also come to an agreement with regard to the management and administration of HELEN's property in furtherance of their agreement with regard to the settlement of the claims in and to said property; and

WHEREAS, litigation over the various disputes between the parties is both costly and time-consuming, and its outcome is uncertain;

NOW, THEREFORE, in consideration of the foregoing, and in consideration of the mutual covenants hereinafter contained, and in consideration of other good and valuable consideration, receipt of which is hereby acknowledged by each party, the parties hereto agree as follows:

1. The Order entered upon March 27, 1985, in HELEN's Decedent's Estate regarding the disposition of real estate formerly owned by HELEN and located at 2921 North Pine Grove, Chicago, Illinois; 1714 West Winona Avenue, Chicago, Illinois; and South Ashland Avenue, Chicago, Illinois, ("the Probate Order") shall govern the disposition of its three subject parcels of real estate ("HELEN's Property") in furtherance of this Agreement.

2. The Probate Order and this Agreement shall be spread of record in the following pending cases in the Circuit Court of Cook County, Illinois ("the Pending Cases"):

(1) Estate of HELEN PAPPAS a/k/a HELEN PAPACHRISTODOULOU, a disabled person, Case No. 81 P 5222, Docket No. 187, Page 632, in the Probate Division, Circuit Court of Cook County, Illinois;

(2) Estate of HELEN PAPPAS, a/k/a HELEN PAPACHRISTODOULOU, Deceased, Case No. 82 P 7642, Docket No. 887, Page 332, in the Circuit Court of Cook County, Illinois, Probate Division.

(3) GEORGE PAPPAS v. HELEN PAPPAS, et al, Case No. 83 CH 9585 in the Circuit Court of Cook County, Illinois, Chancery Division, ("the Chancery case").

3. Ultimate distribution of all of HELEN's property, real and personal, after payment of necessary expenses and costs of administration and Judgments and claims against both HELEN's Disabled and Decedent's estates, shall be made as follows: THERESA COVELLI KRISTAL and JO ANN COVELLI PETERS shall each receive seven and one half (7½%) percent of the funds available; CHRISTINE BARHOUM and TASIA JUNE TRAVLOS shall each receive twenty (20%) percent of the funds available; and GEORGE C. PAPPAS and THEODORE PAPPAS shall each receive twenty-two and one half (22½%) percent of the funds available.

4. Partial distribution of funds accruing from the liquidation of HELEN's property may be made from time to time, upon the written request of four of the six parties hereto, subject to the following limitations:

(A) That the administrator shall hold the minimum amount of $10,000.00 in reserve to assure payment to GEORGE PAPPAS of that certain claim held by him against HELEN's Probate Estate upon resolution of that claim before this Court; and, further,

(B) That over and above the minimum reserve described in subparagraph A above, the administrator shall have sole discretion over the amount of funds to be held in reserve in order to provide for payment of Judgments, allowed claims, costs, taxes, and expenses of administration of HELEN's Decedent's Estate and this Agreement.

5. By his signature to this Agreement, GEORGE PAPPAS agrees and acknowledges that his claim against HELEN's Probate Estate referred to in Paragraph (4)(A), above, shall not exceed the reserve created for that purpose.

6. The Probate Division of the Circuit Court of Cook County, Illinois, shall retain jurisdiction over HELEN's Decedent's Estate, and that case shall remain open, to the extent necessary to permit execution of this Agreement and enforcement of the covenants set forth herein.

In witness whereof, the parties have signed this Agreement on the day and date first above written.

/s/Theodore Pappas
THEODORE PAPPAS
/s/George C. Pappas
GEORGE C. PAPPAS
/s/Tasia June Travlos
TASIA JUNE TRAVLOS
/s/Christine Barhoum
CHRISTINE BARHOUM
/s/Theresa Covelli Kristal
THERESA COVELLI KRISTAL
/s/Jo Ann Covelli Peters
JO ANN COVELLI PETERS

SIGNATURE PAGE

I, CHRISTINE BARHOUM, have been furnished a copy of the Draft Agreement, dated March 24, 1986, with the signatures of Theodore Pappas, George C. Pappas, Tasia June Travlos, Theresa Covelli Kristal and Jo Ann Covelli Peters. I have read the Draft Agreement, and execute this "Signature Page", before a Notary Public, with the understanding that the "Signature Page" is to be appended to and made part of the original Draft Agreement. It is further understood, by executing this "Signature Page", and its attachment to the original Draft Agreement, I show my approval and acceptance of the terms of the Agreement.

Subscribed and sworn to

before me this 4

day of September, 1986

/s/Donald N. Charnofsky
Notary Public

/s/Christine Barhoum
CHRISTINE BARHOUM
dated: 9-4-86