**COMMUNITY INSURANCE
CO., Plaintiff,**[1]

v.

**Jessica Lynn ROWE, et
al., Defendants.**

**No. C–3–98–422.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 12, 1999.

---

1. In removing the action to this Court from the Probate Court of Preble County, Community Insurance Company refers to itself as "Petitioner." Because the Probate Court action was not captioned as an adversarial proceeding, with a corresponding plaintiff and defendant, the appropriate terminology for the parties is not clear. However, the Court is uncomfortable referring to Community Insurance Company as "Plaintiff" and the Rowes as "Defendants," considering that the Application to Settle Claims of Minors, filed in the Probate Court, was filed by the Rowes. Accordingly, the Court chooses not to use such labels, and it will refer to the parties by their names.

DECISION AND ENTRY OVERRULING THE ROWES' MOTION TO DISMISS (DOC. # 4–1); DECISION AND ENTRY SUSTAINING THE ROWES' MOTION TO REMAND (DOC. # 4–2); DECISION AND ENTRY OVERRULING COMMUNITY INSURANCE COMPANY'S MOTION TO CONSOLIDATE (DOC. # 14); CAPTIONED CAUSE REMANDED TO THE PROBATE COURT OF PREBLE COUNTY; TERMINATION ENTRY

RICE, Chief Judge.

The instant litigation stems from a one-car accident, which occurred on April 20, 1994, during which Aaron and Jessica Rowe were severely injured.[2] The driver of the vehicle was Charles Rowe, the children's father. The children, Aaron and Jessica, were qualified dependents under their father's health insurance plan, a benefit which he received as an employee of White Family Companies. Charles Rowe's health insurance plan allegedly paid approximately $116,000 in medical bills due to his children's injuries. The health benefit plan is administered by Community Insurance Company ("CIC"). As early as March, 1995, CIC has maintained, through correspondence, that it had a right of subrogation for medical expenses paid on behalf of Jessica and Aaron.

Following the accident, Lisa Ann Tubbs, the mother and legal guardian of Aaron and Jessica Rowe, filed a personal injury suit in the Common Pleas Court of Preble County, Ohio, on behalf of her children

Daniel T Downey, Kreiner & Peters Co., L.P.A., Dublin, OH, for Community Insurance Co., plaintiff.

Thomas McCann Baggott, Altick & Corwin–3, Dayton, OH, David Michael Deutsch, David M. Deutsch Co., LPA, Dayton, OH, Roland W. Baggott, III, New Orleans, LA, for defendants.

**2.** The following facts are taken from the arguments and documents submitted in the Rowes' Motion to Dismiss or, in the Alternative, for Remand (Doc. # 4) and Community Insurance Company's memorandum contra (Doc. # 7). Although those arguments and documents cannot be considered evidence, because Defendant has failed to properly authenticate them, the facts presented appear to be undisputed. Much of the procedural history has been derived from the Rowes' Notice of Submission (Doc. # 10), which contains a certified copy of the Probate Court record for Aaron Michael Rowe. Although no similar collection of Probate Court documents has been filed for Jessica Lynn Rowe, the Court assumes that the Application to Settle Claim of Minor, Narrative Statement, motions, and Entries, filed on behalf of her brother, are illustrative of the procedural history for the settlement of her claims, as well. Said documents were filed with this Court one day prior to the original date set for oral argument on the instant Motion. The Court, accordingly, deems consideration of these documents proper in resolving the Rowe's' Motion for Remand.

against Charles Rowe, Case No. 96–CV–22404. She reached a settlement with Charles Rowe's automobile insurer, Motorist Mutual Insurance Company ("Motorist Mutual"), in the amount of $100,000 for both children.[3]

On May 5, 1998, Tubbs filed an application with the Preble County Probate Court to settle the children's claims.[4] On the same date, Tubbs filed a Narrative Statement with the Probate Court, setting forth the factual circumstances of the accident, the injuries suffered by the children, and the pending issues regarding the settlement. In that document, Tubbs argued that CIC was not entitled to any monies out of the settlement and requested a declaration from the court that the children's claims take precedence over those of the subrogated insurers, namely CIC. Tubbs requested approval of the settlement and the court's advice as to the proper division of the funds among the children. CIC claims that it received a copy of the Narrative Statement on or about September 3, 1998.

On June 30, 1998, the Probate Court approved the settlement of the children's claims. On the same date, Tubbs filed a Motion to Continue three matters, to wit: (1) claims by creditors for money due and owing for medical treatment, (2) the subrogation claim of CIC, and (3) the division of the settlement proceeds. The Motion to Continue was also approved on June 30, 1998. The Probate Court scheduled a hearing for July 17, 1998, on those issues,[5] and required Tubbs to send notice of the hearing to all creditors who might claim an interest in the settlement, including CIC. A pre-trial conference was held on September 4, 1998.

On September 23, 1998, CIC removed the litigation to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446 (Doc. # 1).[6] CIC claimed that the matter before the Probate Court required a determination of the rights of an ERISA benefit plan to reimbursement. The claim, therefore, involved matters within the exclusive jurisdiction of the federal courts and raised questions of federal law.

Pending before the Court is the Motion of Jessica and Aaron Rowe to Dismiss for lack of subject matter jurisdiction or under the *Burford* abstention doctrine (Doc. # 4–1). Alternatively, they move for remand to the Preble County Probate Court (Doc. # 4–2). Also pending before the Court is CIC's Motion to Consolidate this litigation with Case No. C–3–98–493, also before this Court (Doc. # 14). For the reasons assigned, the Rowes' Motion to Dismiss (Doc. # 4–1) is OVERRULED, the Rowes' Motion for Remand (Doc. # 4–2) is SUSTAINED, and CIC's Motion to Consolidate (Doc. # 14) is OVERRULED.

I. *The Rowe's Motion to Dismiss (Doc. # 4–1)*

The Rowes request that this Court to dismiss this action on the grounds that it lacks subject matter jurisdiction over the claims or, in the alternative, under the *Burford* abstention doctrine. The Rowes argue that this action is appropriately litigated in the Preble County Probate Court, from whence the case was removed. Be-

---

**3.** The settlement also specified attorney fees in the amount of $10,000 to be shared equally between the children, and expenses in the amount of $1,210.54 for each child ($2,421.08 total).

**4.** The Court has been provided only with a copy of the Preble County Probate Court file for Aaron Rowe. However, based upon the representations of the parties, the Court presumes that a similar Application to Settle a Minor's Claim was filed regarding the claim of his sister, Jessica.

**5.** The hearing was repeatedly continued, first until September 4, 1998, then until December 4, 1998, and finally until March 4, 1999.

**6.** The Court has no knowledge of whether the personal injury lawsuit, filed in Common Pleas Court against Charles Rowe, has been terminated due to the Probate Court's approval of the settlement. However, CIC appears to have intended to remove only the proceedings in Probate Court.

cause they seek to have this case returned to state court, rather than dismissed in its entirety, the Rowes' request is appropriately raised in a Motion for Remand. The Court, therefore, will consider all the arguments raised by the Rowes under the guise of a Motion to Dismiss (Doc. # 4–1) as part of their Motion, In The Alternative, for Remand (Doc. # 4–2). The Rowes' Motion to Dismiss (Doc. # 4–1) is OVERRULED.

## II. Standard for Motion to Remand (Doc. # 4–2)

■ The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

## III. Analysis of the Rowes' Motion for Remand (Doc. #4–2)

The Rowes present four basic arguments in favor of remand of this litigation to the Preble County Probate Court. *First*, they contend that this Court lacks subject matter jurisdiction over the instant action, because federal courts are not vested with power over probate matters. *Second*, the Rowes argue that this Court should decline to hear this case under the *Burford* abstention doctrine. *Third*, the Rowes assert that CIC has failed to meet the requirements of 28 U.S.C. §§ 1441 and 1446 for removal. *Fourth*, they contend that ERISA does not provide a basis for removal to this Court. Each of the above arguments will be addressed in turn.

### A. Federal Subject Matter Jurisdiction

The Rowes contend that this Court lacks subject matter jurisdiction over the instant action, because federal courts are not vested with power over probate matters. They argue that, under the laws of Ohio, the Probate Court is granted exclusive jurisdiction over probate matters, including the settlement of minor's claims. The Rowes claim that this case concerns the approval and apportionment of a proffered settlement of $100,000 by Motorist Mutual for the claims of minor children, an issue which is exclusively within the province of the Probate Court.

Article III, Section 2 of the Constitution sets forth the subject matter jurisdiction of federal courts. It states:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between

a State, or the Citizens thereof, and foreign States, Citizens or Subjects.[7]

Const. Art. III § 2, cl. 1. However, district courts are not necessarily vested with all the jurisdiction permitted under Article III. *Palmore v. United States*, 411 U.S. 389, 401, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973) ("[I]f inferior federal courts were created, [Congress was not] required to invest them with all the jurisdiction it was authorized to bestow under Art. III."). In very limited cases, the Supreme Court has stated that, due to the nature of the litigation, federal courts are divested of power to issue decrees. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) ("[T]he domestic relations exception, as articulated by this Court since *Barber [v. Barber*, 21 How. 582, 16 L.Ed. 226 (1859) ], divests the federal courts of power to issue divorce, alimony, and child custody decrees."); *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946) (probate exception to diversity jurisdiction).

One such limitation to subject matter jurisdiction is the probate exception. It is well-settled that federal courts lack jurisdiction to probate a will or to administer a decedent's estate. *Markham*, 326 U.S. at 494, 66 S.Ct. 296 ("It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789, 1 Stat. 73, and § 24(1) of the Judicial Code, which is that of the English Court of Chancery in 1789, did not extend to probate matters."). Federal courts, however, do "have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the

probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court." *Id.; Firestone v. Galbreath*, 976 F.2d 279, 282–83 (6th Cir.1992). The standard for determining whether an action falls within the probate exception is whether, under state law, the dispute would be cognizable only by the Probate Court. *Rienhardt v. Kelly*, 164 F.3d 1296 (10th Cir.1999); *Rice v. Rice Foundation*, 610 F.2d 471, 476 (7th Cir.1979). "If so, the parties will be relegated to that court; but 'where the suit merely seeks to enforce a claim inter partes, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.'" *Rienhardt*, 164 F.3d at 1300 (quoting *Lamberg v. Callahan*, 455 F.2d 1213, 1215 (2d Cir.1972)); *Rice*, 610 F.2d at 476 (same).

The Rowes' contention that this Court is precluded from exercising subject matter jurisdiction over the instant action due to the probate exception fails for a number of reasons. *First*, as a judicially-created exception to subject matter jurisdiction, the meaning of the term "probate" is construed quite narrowly. *Rice*, 610 F.2d at 474–475. Although the scope of the exception has not been definitively established, *Georges v. Glick*, 856 F.2d 971, 973 (7th Cir.1988), it has been applied in the context of probating a will or other proceedings concerning a decedent's estate. *Id.* ("As a general matter, courts tend to view the probate exception as extending to all suits 'ancillary' to the probate of a will."); *see O'Callaghan v. O'Brien*, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905). This case does not involve the probate of a will, nor does it involve the estate of a decedent. Accordingly, this action involves matters outside the meaning of the term "probate."[8] *See City of Cleveland v. Corley*, 19 Ohio Misc. 15, 398 F.2d 41, 43 (6th Cir.1968) (stating, in reviewing re-

---

7. This has been modified by the Eleventh Amendment, which states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

by Citizens or Subjects of any Foreign State." Const. Amend. XI

8. Although alone in its viewpoint, the Ohio Court of Appeals for the Twelfth District has stated that the Court of Common Pleas had

mand to Probate Court of a condemnation action, that "[i]t is clear that with the requisite diversity state condemnation actions may be removed to and tried in the appropriate district courts.")

*Second,* the probate exception has been applied only in the context of diversity jurisdiction. The Court's research has yielded no instances where a federal court has declined to exercise subject matter jurisdiction, under this doctrine, when based on a federal question. Herein, CIC asserts that this Court has subject matter jurisdiction over this action due to a question of federal law, namely the interpretation of the health benefit plan under ERISA. Accordingly, the probate exception does not apply to this action, and it does not constitute a basis for remand to the Probate Court of Preble County.

## B. *Burford Abstention*

■ The Rowes argue that, assuming that the Court has subject matter jurisdic-

concurrent jurisdiction with the Probate Court to approve a settlement on behalf of a minor. In *Lunsford v. Gross,* CA81–04–029, 1985 WL 7719 (Butler Cty. Aug. 30, 1985), the court concluded that the Ohio legislature had not granted the Probate Court exclusive jurisdiction over such settlements. The court stated, in pertinent part:

> R.C. § 2101.24 enumerates those matters over which the probate court has exclusive jurisdiction, but that section fails to include approval of the settlement of claims of a minor who is entitled to damages for physical injury. Therefore, we must conclude that the probate court does not have exclusive jurisdiction over these matters.
> ... The mere fact that such subject matter jurisdiction has been by statute (R.C. § 2111.18) specifically conferred upon the probate court does not mean that the court of common pleas is without jurisdiction. It has been determined that the general assembly is cognizant of the difference between concurrent jurisdiction and exclusive jurisdiction. *See Seventh Urban v. Circle* (1981), 67 Ohio St.2d 19, 24, 423 N.E.2d 1070. Consequently, we may presume that if the general assembly had intended to vest exclusive jurisdiction over minor settlements in the probate court, it would have done so. *See* R.C. § 2101.24; *Seventh Urban, supra.*

tion over this action, it should decline to exercise same under the doctrine set forth by the Supreme Court in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[9] The Supreme Court has repeatedly stated that "abstention from jurisdiction is the exception, not the rule, and that federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635 (6th Cir.1990) (quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress"). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where ...

*Lunsford,* 1985 WL 7719 at *2–3.

9. The argument presented by the Rowes appears to confuse the *Burford* abstention doctrine with the *Younger [v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ] abstention doctrine, which imposes heightened requirements for an injunction to restrain an already-pending or an about-to-be-pending state criminal action, or civil action involving important state interests. *See generally Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 431–432, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). They state that the Court should consider three factors in determining whether to abstain: (1) whether state proceedings are pending; (2) whether the state proceeding involves an important state interest; and (3) whether the state proceeding will afford the plaintiff an adequate remedy. (Doc. # 4 at p. 7) These factors are the criteria for the invocation of the *Younger* abstention doctrine, not the *Burford* doctrine. *Nilsson v. Ruppert, Bronson & Chicarelli, Co., LPA,* 888 F.2d 452, 454 (6th Cir.1989). Although the instant action was initiated in the Preble County Probate Court, following removal to this court, there is presently no concurrent or about-to-be-pending lawsuit in state court, with regard to the matters at issue in this action. Accordingly, the federal-state comity issues underlying *Younger* are not implicated.

[it] would clearly serve an important countervailing [state] interest." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236. Under the *Burford* doctrine, federal courts should abstain from deciding cases when there is a need to defer to complex state administrative procedures. In *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, the Supreme Court stated that abstention under the *Burford* doctrine is appropriate in two instances:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States, supra*, 424 U.S., at 814, 96 S.Ct., at 1245 [ (summarizing *Burford* abstention doctrine) ].

491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *see MacDonald v. Village of Northport, Mich.*, 164 F.3d 964 (6th Cir.1999).

■ The Rowes assert that this Court's exercise of jurisdiction would disrupt Ohio's efforts to establish a coherent policy with respect to settlement of the claims of minors.[10] They state that Ohio has established laws governing the settlement of minors' claims in order to protect the children, and that those laws illustrate the state's substantial public policy of protecting those children.[11]

Undoubtedly, the State of Ohio has a substantial interest in protecting the interests of children. As stated in Ohio Rev. Code § 2111.50(A)(1), "the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships." Although the Probate Court maintains an interest in ensuring that settlements of the claims of minors are fair and reasonable, this Court can discern no overarching state policy with respect to the settlement of such claims. Furthermore, if this case were properly before this Court, the Court would be capable of ensuring that Aaron and Jessica Rowe receive a fair settlement. Therefore, this Court concludes that it need not abstain from exercising jurisdiction over this litigation under the *Burford* doctrine.

## C. Requirements for Removal

The Rowes contend that CIC has failed to comply with the procedural requirements of 28 U.S.C. §§ 1441 and 1446 for removal. *First*, they assert that fewer than all defendants have joined in the removal. *Second*, they argue that CIC failed

10. The Rowes have not argued that this litigation involves "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case," such that abstention under the *Burford* doctrine would be appropriate on that ground. Upon review of the parties' memoranda and supporting documentation, the Court does not consider that any such questions are implicated in this action. Accordingly, the Court finds no basis to conclude that abstention would be appropriate, pursuant to the *Burford* doctrine, due to the existence of difficult questions of state law.

11. The Court notes that the Rowes vacillate as to which proceeding is of primary concern, the Probate Court litigation or the personal injury action, depending upon their argument. With respect to the *Burford* abstention doctrine, the Rowes appear to assert that the primary proceeding at issue is the Probate Court settlement of the children's claims. In addressing whether CIC has complied with the procedures for removal, the Rowes essentially assert that CIC should have included the defendants and documents from the personal injury action and should have based their time frame for removal on that litigation.

to attach all the state court documents to its Notice of Removal. *Third*, the Rowes state that CIC did not remove the action in a timely fashion. In response, CIC argues that it has complied with all of the requirements for removal to this Court. As discussed below, the Rowes' Motion for Remand is SUSTAINED, because CIC has not established that it was a party to the Probate Court action or that its motion for remand was timely.[12]

### 1. Consent of All Defendants in Removal

■ The Rowes challenge CIC's assertion in its Petition for Removal that no other party's consent was required.[13] Section 1446(a) of 28 U.S.C. requires that "[a] defendant or defendants desiring to remove any civil action ... shall file ... a notice of removal." Despite the ambiguity of the term "defendant or defendants," it is well established that removal generally requires unanimity among the defendants. *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir.1995), citing *Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 247, 20 S.Ct. 854, 44 L.Ed. 1055 (1900) ("[I]f a suit arises under the Constitution or laws of the United States, or if it is a suit between citizens of different states, the defendant, if there be but one, may remove, or the defendants, if there be more than one.…"). However, where a separate and independent claim that would be removable if sued upon alone is joined with an otherwise non-removable claim, the defendants to that separate claim may remove the entire action, and the district court may exercise its discretion to remand all matters not within its original jurisdiction. 28 U.S.C. § 1441(c); *Andrews v. Electric Motor Sys., Inc.*, 767 F.Supp. 853, 854 (S.D.Ohio 1991) (Rice, J.).

In their Motion, the Rowes asserts that CIC failed to obtain the consent of Charles Rowe and Motorist Mutual, his automobile insurer and the party offering the settlement. They claim that both Charles Rowe and Motorist Mutual are indispensable parties.[14] In so arguing, the Rowes assert that the removed action is merely an extension of the personal injury lawsuit, filed in the Preble County Court of Common Pleas. CIC responds that the relevant lawsuit began upon the filing of the Application to Settle a Minor's Claim. It argues, accordingly, that there were no defendants to notify of removal in the Probate Court proceeding. "In reality," CIC argues, "there were two state court cases involving Aaron and Jessica Lynn Rowe. The case filed in the common pleas court against Charles Rowe and Motorist Mutual, and the probate court matter that CIC removed." (Doc. # 7, p. 11) CIC, thus, asserts that there were no other parties to the probate action.

■ Before addressing whether CIC was required to obtain the consent of others to remove the case to federal court, the

---

12. Based on its conclusion that CIC has not established that it was a party to the Probate Court action or that its motion for remand was timely, the Court need not address whether CIC attached the appropriate documents to its petition for removal.

13. In their Petition for Removal, CIC states that the consent of Aaron and Jessica Rowe was not required, because they had requested a ruling on reimbursement rights of an ERISA benefit plan, which is within the exclusive jurisdiction of federal courts. CIC does not refer to any other entities or individuals as "parties."

14. The Rowes also assert that the State of Ohio and Judge Dues are indispensible parties. They state:

Ohio should be joined because CIC's removal attacks and attempts to subvert the laws and policies of the State. Similar to any Constitutional attack, Ohio should be joined and given the opportunity to defend its laws and policies.

Judge Dues should be joined as an indispensible party because has the role of "superguardian." He must watch over the interests of Jessica and Aaron while making the division and allocation of the money offered in the settlement. The settlement cannot go forward without his approval.

(Doc. # 4, p. 8)

Court feels constrained to address CIC's status in this litigation. Although not specifically stated, the parties agree that CIC was not a named defendant in the Rowes' personal injury action in Common Pleas Court against Charles Rowe. Nominally, the Application to Settle Minor's Claim does not appear to initiate an adversarial proceeding. However, as shown by the Rowes' Motion to Continue, filed on June 30, 1998, in the Probate Court of Preble County (Doc. #10), and the Probate Court's Entry regarding that motion (*id.*), the rights to the settlement monies at issue are being disputed by a number of parties. The Rowes' Motion to Continue, which was granted, requested that the Probate Court continue the hearing and decision on the following matters: (1) a claim by creditors as set forth in a lawsuit claiming that certain monies are due and owing for medical treatment for the ward; (2) the subrogation claim of Community Insurance Company for medical expenses paid by CIC; and (3) the division of the settlement proceeds between the guardianships of Aaron Rowe and Jessica Rowe. (Doc. #10) Because Children's Medical Center and Dayton Pediatric Imaging, Inc., received notice of the hearing, *see* Notice of Hearing and Entry, both dated September 23, 1998 (Doc. #10), the Court presumes that they have an interest in the settlement monies. Furthermore, the children's father and his automobile insurer have participated in the Probate Court proceedings. *Id.*

Although there are a number of entities who are asserting a claim against the settlement monies, there is no evidence that CIC or the other creditors have become a party to the litigation filed in the Preble County Probate Court. In fact, CIC states:

> A review of attached exhibit A [the Narrative Statement] will show that Aaron and Jessica Lynn Rowe did not attach a certificate of service to the narrative statement filed in the probate court matter indicating that other parties had

been served with same. This is illustrative of the fact that there were no other parties to the probate action.

(Doc. #7, p. 11) Accordingly, CIC acknowledges that the Rowes did not name CIC, or any other entity or individual, as a defendant in the Probate Court proceeding. Although CIC, as well as Charles Rowe, Motorist Mutual, Children's Medical Center, and Dayton Pediatric Imaging, Inc., have received notice of hearings and have participated in the Probate Court proceeding, there is no evidence before the Court that they have intervened or sought intervention in that case. It is axiomatic that a non-party has no right to remove the litigation from state court to federal court. Because CIC was not a party to either the action in the Common Pleas Court or the Probate Court, CIC is not a defendant within the meaning of 28 U.S.C. §§ 1441 and 1446. *See Oalmann v. K-Mart Corp.*, Case No. 91–4621, 1992 WL 31345 (E.D.La.1992) (remanding action to state court when plaintiff's action did not fall within § 1132(a)(1)(B) and the record had no indication that the ERISA plan had intervened in the action). Accordingly, CIC had no right to seek removal, and Plaintiff's Motion to Remand (Doc. #4) must be SUSTAINED.

██ Even if the Court were to consider CIC as a type of "intervening defendant," CIC failed to comply with the procedural requirement that all defendants consent to removal. As noted above, the parties dispute whether additional defendants were present in the litigation, such that their consent was required. The essence of the dispute is whether two civil actions, within the meaning of § 1441, have been filed.

28 U.S.C. § 1441 authorizes the removal of any "civil action" over which the federal district court has original jurisdiction. As noted by the court in *Truong ex rel. Truong v. Grand Trunk W. R.R. Co.*, 882 F.Supp. 107 (E.D.Mich.1995), "[t]he term 'civil action' under § 1441 does not embrace proceedings that are merely supple-

mental, ancillary, or incidental to another action, and such proceedings are not removable to federal court." *Id.* at 109, citing *Bank v. Turnbull,* 83 U.S. (16 Wall.) 190, 195, 21 L.Ed. 296 (1872); *Federal Savings and Loan Ins. Corp. v. Quinn,* 419 F.2d 1014, 1018 (7th Cir.1969); *see McCane v. McCane,* 47 F.Supp.2d 848 (E.D.Mich.1999) (motion to enforce the amended judgment of divorce is clearly a proceeding that is merely supplemental to the original divorce action and, therefore, not a civil action subject to removal).

Herein, the Application to Settle Minor's Claim is not a "civil action" subject to removal, and the primary lawsuit was the personal injury action filed in Common Pleas Court. The application filed in Probate Court was required to consummate the settlement reached in the tort action. If the Probate Court were to reject the settlement, the underlying tort action would remain a viable claim. *See Estate of Ashmore v. Healthcare Recoveries, Inc.,* Case No. 1:87cv177–B–D, 1998 WL 211778 (N.D.Miss. Mar.25, 1998). The Court, therefore, concludes that the application filed in Probate Court constitutes a proceeding which is ancillary to the personal injury action. *See Blackburn v. Sundstrand Corp.,* 115 F.3d 493, 494 (7th Cir. 1997) ("The petition to apportion the fund invoked the ancillary jurisdiction of the state court and was part of that original, non-removable [personal injury] action.") Accordingly, the Court agrees with the Rowes that one "civil action" has been filed by them and that the lawsuit relevant to whether all defendants have participated in removal is the action filed in Common Pleas Court. In removing the action to this Court, CIC failed to obtain the consent of the defendants in the personal injury action filed in the Court of Common Pleas. Accordingly, CIC's removal was defective.

Even if the Court were to accept CIC's argument that two separate "civil actions" were initiated,[15] the Court still concludes that removal of the probate action was defective. As discussed above, there are a number of entities who are asserting a claim against the settlement proceeds. To the extent that CIC is considered an "intervening defendant" in the probate action, those additional creditors also must be afforded the same status. Accordingly, CIC was required to obtain the consent of the other creditors in order to remove that action to this Court. CIC has not argued, nor presented evidence, that such consent was sought and given. Accordingly, CIC's removal of the Probate Court action was defective.

## 2. *Timeliness of Removal*

The Rowes argue that CIC has failed to comply with the time limitations for removal, set forth in 28 U.S.C. § 1446. Under that statute,

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, expect that a case may not be removed on the basis of

**15.** The Court notes that the Probate Court approved the amount of the settlement on June 30, 1998. At the time of removal, the remaining issue was apportionment of that

fund. Arguably, the personal injury action in Common Pleas Court was no longer viable, thus leaving the probate action as the only action to be removed.

jurisdiction conferred by section 1332 of this title [diversity of citizenship] more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). The Rowes argue that CIC has failed to comply with both the thirty (30) day deadline for removal and the one year time limitation.[16]

In support of their arguments, the Rowes assert that CIC was aware of the personal injury litigation in the Preble County Court of Common Pleas for more than four years, and that CIC has attempted to assert its subrogation claim as early as March 9, 1995. In addition, the Rowes claim that CIC was given notice on July 2, 1998, of the pre-trial conference that occurred on September 4, 1998. CIC attended that hearing and made arguments for subrogation.

In response, CIC argues that, although it knew that a Probate Court proceeding was undertaken on behalf of Aaron and Jessica Rowe, it did not have notice of the Rowes' attempt to litigate the terms of an ERISA benefit plan, *i.e.*, CIC's right to subrogation or reimbursement, during that proceeding, until it received the Narrative Statement on September 4, 1998. In support of its argument, CIC has attached a copy of correspondence, dated September 3, 1998, from Thomas Baggott, attorney for the Rowes, to Gilbert Blomgren, enclosing the Narrative Statement. CIC, however, has failed to provide any evidence, by affidavit or otherwise, indicating that its receipt of the Narrative Statement constituted its *first* notice that the issue of

its right to settlement monies was before the Probate Court. Accordingly, even if CIC had a right to remove the litigation to this Court, it has failed to demonstrate that its removal was timely.

### D. *ERISA as a Basis for Removal*

In its Petition for Removal, CIC asserted that this Court has federal question subject matter jurisdiction, based on 29 U.S.C. § 1132(a)(1)(B), 1132(a)(3), and 1132(e)(1).[17] The Rowes contend that ERISA does not provide a basis for removal to this Court, asserting three arguments regarding this concern. *First,* they state that the Sixth Circuit case law relied upon by CIC does not support removal jurisdiction under the present circumstance. *Second,* they assert that CIC lacks standing to bring an action under ERISA. *Finally,* they assert that ERISA has been raised as a federal defense, which cannot form a basis for removal to federal court. As discussed below, the Court concludes that ERISA does not completely preempt the Rowes' claims and, therefore, does not constitute a basis for removal.[18]

### 1. *ERISA, 29 U.S.C. § 1132(a)(1)(B)*

The Rowes assert that § 1132(a)(1)(B) does not provide a basis for subject matter jurisdiction under the circumstances of this case. They state that the children have not raised claims either to recover benefits due to them under the plan, to enforce their rights under the plan, or to clarify their rights to future benefits. They assert that they "merely wish to go forward

---

**16.** The one year time limitation in 28 U.S.C. § 1446(b) applies to cases in which federal subject matter jurisdiction is based upon diversity of citizenship (28 U.S.C. § 1332). In the instant action, subject matter jurisdiction is based upon 28 U.S.C. § 1331, which provides federal courts with subject matter jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. The one year deadline is, therefore, inapplicable to this litigation. Accordingly, the Rowes' argument that removal was improper because CIC failed to comply with that deadline is overruled.

**17.** CIC has not asserted, nor have they provided evidence of, subject matter jurisdiction based on diversity of citizenship.

**18.** The Rowes' first and third arguments, concerning Sixth Circuit case law and ERISA preemption, will be addressed together. Because the Court concludes that ERISA does not create federal question subject matter jurisdiction in this lawsuit, the Court need not address their second argument, namely whether CIC is a fiduciary with standing to remove the action under ERISA.

with the distribution and apportionment of the moneys to be received in the settlement with Motorist Mutual." (Doc. # 4, p. 14) To the extent ERISA factors into this suit, they argue, it has been raised by CIC as a defense. CIC responds that the Rowes seek to enforce their rights under the Health Benefits Plan regarding subrogation and reimbursement, and that their claim is completely preempted by ERISA, rendering it removable.

Federal preemption of state law comes in two flavors: conflict preemption and complete preemption. Conflict preemption arises where compliance with both federal and state law is physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see Warner v. Ford Motor Co.*, 46 F.3d 531, 533 (6th Cir.1995) (en banc) (discussing difference between conflict and complete preemption). In contrast, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted." *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner*, 46 F.3d at 533. If the plaintiff's claim arises under state law, the mere assertion of federal

preemption as a defensive argument will not confer federal question subject matter jurisdiction. As stated by the Supreme Court in *Metropolitan Life Ins. Co. v. Taylor*,

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. 1542. The Supreme Court has found that Congress intended to make causes of action within the scope of 29 U.S.C. § 1132(a)(1)(B), which allows plan participants or beneficiaries to bring a civil action to recover benefits due to him under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan, removable to federal court under the doctrine of complete preemption. *Id.* at 66, 107 S.Ct. 1542. However, causes of action which raise conflict preemption are not removable.

> The [Supreme] Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life*, at 54, 107 S.Ct. at 1547. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner,* 46 F.3d at 534. Accordingly, this Court must determine whether the Rowes have raised claims within the scope of Section 1132(a), which are completely preempted, or whether CIC's arguments are merely assertions of conflict preemption, which cannot form the basis for removal.

The Sixth Circuit has not developed a test to determine whether a claim falls within the scope of § 1132(a)(1)(B). *Ouellette v. Christ Hosp.,* 942 F.Supp. 1160, 1164 (S.D.Ohio 1996). The Seventh Circuit, after analyzing cases dealing with complete preemption under § 301 of the LMRA, has devised such a test. As summarized by the *Ouellette* court,

> The Seventh Circuit found that "[t]he common thread running through [the] cases [interpreting § 301] is that complete preemption is required where a state law claim cannot be resolved without interpretation of the contract governed by federal law." *Rice,* 65 F.3d at 644. The Seventh Circuit concluded that similar analysis was appropriate under § 1132(a) because § 1132(a) concerns claims to recover benefits or enforce rights "under the terms of the plan." *Id.* Thus, "a suit brought by an ERISA plan participant is an action to 'enforce his rights under the terms of a plan' within the scope of § [1132](a)(1)(B) where the claim rests upon the terms of the plan or the 'resolution of the [plaintiff's] state law claim ... require[s] construing [the ERISA plan].'" *Id.* at 644–45 (quoting *Lingle v. Norge Div. Of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)).

*Ouellette,* 942 F.Supp. at 1164.

Although the Court would normally begin with an evaluation of a well-pleaded complaint, no complaint is present in this litigation.[19] The matter before the Probate Court was initiated by the filing of

the Application to Settle A Minor's Claim (*see* Doc. # 10) on May 5, 1998. The Application requested that the Probate Court "authorize the applicant to execute a release which shall be effective upon payment of the settlement." (*Id.*) The Application itself does not resemble, in any way, a cause of action under § 1132(a)(1)(B).

Filed concurrently with the Application was the Narrative Statement. With regard to CIC, the Narrative Statement stated, in pertinent part:

> Your applicant says that Community Insurance Company is not entitled to any monies out of the settlement which has been proffered.
>
> 1. It is black letter law that an entity seeking subrogation stands in the shoes of, and has no more rights than the person through whom they seek subrogation. In this instance, Charles Rowe is the tortfeasor, is the person who, by his negligent behavior, severely injured both his children. Community Insurance Company seeks to do that which the tortfeasor cannot do, i.e., they, standing in the shoes of the tortfeasor, seek to be reimbursed for monies which expenditure was necessitated by the negligence of the tortfeasor. They, standing in the shoes of the tortfeasor, seek that which the tortfeasor is not permitted, i.e., reimbursement for costs of medical treatment resulting from Tortious conduct.
>
> 2. Your applicant says that the commonlaw [sic] doctrine of "make whole" applies to this matter. Even if the medical expenses which Community Insurance Company claims were to rise above the status of the tortfeasor, Aaron and Jessica Rowe must be fully, fairly and completely compensated for the negligent conduct of the tortfeasor, Charles Rowe, before Community Insurance Company is entitled to

---

19. Although the parties have not submitted a copy of the complaint from the personal injury action, they appear to agree that the litiga-

tion in Common Pleas Court concerned only the liability of Charles Rowe for the automobile accident.

any subrogation. Your applicant says that the money proffered is inadequate to compensate the wards; the only monies available are One Hundred Thousand Dollars ($100,000.00).

The law in Ohio is clear that where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek a setoff from the limits of its coverage until the insured has been fully compensated for the injuries. This principal [sic] of law is consistently supported by other cases in Ohio.

Accordingly, it is respectfully submitted that any claims for subrogation with regard to Aaron Row[e] or Jessica Rowe, are secondary to the primary claims for personal injuries of said parties. The insurance proceeds available from the tortfeasor are inadequate to pay these primary claims. Therefore, the Plaintiffs, Aaron Rowe and Jessica Rowe, request a Declaration from this Court that their claims take precedence over those of subrogated insurers herein thereby permitting the injured Plaintiffs to proceed with settlement from the tortfeasor's insurance carrier.

(Narrative Statement) (citations omitted). In their Narrative Statement, the Rowes explicitly request a declaratory judgment from the Probate Court as to CIC's rights to subrogation or reimbursement of the settlement proceeds. Thus, the Court must determine whether such a request is sufficient to confer it with federal question subject matter jurisdiction.

After thorough research, the Court has found no Sixth Circuit authority addressing the facts and circumstances at issue.

However, this scenario has been addressed in other circuits. *E.g., Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997); *see Estate of Ashmore*, 1998 WL 211778 at *2 (stating, in dicta, that even if an ERISA plan contained an express subrogation clause, "Mississippi law requiring prior chancery court approval of assignment of a minor's right to insurance proceeds would not be preempted by ERISA.") (citing *Clardy v. ATS, Inc. Employee Welfare Benefit Plan*, 921 F.Supp. 394, 399 (N.D.Miss.1996) and 29 U.S.C. § 1144(b)(7), which exempts qualified domestic relations orders from preemption under ERISA).

In *Blackburn v. Sundstrand Corp., supra,*[20] the plaintiffs were injured in a car accident and their welfare benefit plan paid $25,831 toward their medical care expenses. The plaintiffs filed suit in state court against the other driver. Following a settlement, the welfare benefit plan claimed an interest in the settlement proceeds based on a subrogation provision.[21] The plaintiffs filed a petition to apportion the fund. The welfare benefit plan removed the action to federal court pursuant to 28 U.S.C. § 1441(b). In discussing complete preemption, the court stated:

> Section [1132] of ERISA, 29 U.S.C. § 1132, provides the sole authority for a participant's claim to benefits from a welfare or pension plan. Thus if the [plaintiffs] had sought to require [the] plan to pay additional benefits, their claim would have arisen under ERISA, and [the plan] could have removed it. But neither the original tort action nor the petition to adjudicate claims to the settlement fund sought a payment from the plan. Section [1132] is irrelevant;

**20.** A number of district courts in the Seventh Circuit have held that when a plaintiff sought adjudication of a lien asserted on behalf of an ERISA plan to enforce the plan's reimbursement and subrogation rights, the action fell within the scope of § 1132(a)(1)(B), because the claim rested upon the terms of the plan or required construing the ERISA plan. *E.g., Fravel v. Stankus*, 936 F.Supp. 474, 478 (N.D.Ill.1996) (plaintiff's motion to adjudicate

lien required construing the parties' ERISA plan and therefore fell within the scope of the civil enforcement provision). However, most of those decisions preceded the Seventh Circuit's opinion in *Blackburn*.

**21.** The plaintiffs' attorney also sought attorney's fees and costs from the fund.

[the plan's] arguments (and the district court's judgment) rest exclusively on § [1144(a) ]; and for the reasons developed in *Rice* [,] defenses of this kind do not support removal under § 1441(b).

115 F.3d at 495. Accordingly, the Seventh Circuit held that the district court lacked subject matter jurisdiction over the action, vacated the district court judgment, and ordered the case to be remanded to state court.

Following *Blackburn,* the Northern District of Illinois in *Goltz v. Health Cost Controls,* No. 96–C–8535, 1997 WL 403638 (N.D.Ill. July 16, 1997), a case almost identical to the instant litigation, found remand to be proper. In that case, a health and welfare fund [22] sought subrogation and reimbursement for medical expenses paid for the injuries of a minor plan beneficiary following an accident. Following a settlement with the tortfeasor, the child's guardian filed a motion to adjudicate the plan's lien in state court. The action was removed to federal court on the grounds that the motion was a civil action preempted by § 1132(a)(1)(B). The plaintiff moved to remand to state court. The district court granted the plaintiff's motion for remand, stating:

> Although plaintiff's motion to adjudicate the lien in the instant case does not literally ask for enforcement of rights under the plan, it seeks a determination of whether HCC is entitled to part of her settlement. *Speciale* at 743. Resolution of such a claim has been found in these similar cases to require construction of the ERISA plan ... However, none of these cases had the benefit of the Seventh Circuit's recent decision in *Blackburn* ....

The facts of the instant case are very similar to those in *Blackburn.* HCC, on behalf of [the plan], seeks recovery of the full amount [the plan] paid for Joshua Goltz's medical expenses out of the personal injury settlement proceeds paid to Joshua Goltz by the tortfeasor. Joshua Goltz's guardian, Phyllis Goltz, filed a motion to adjudicate the claim of HCC in state court. The motion alleged that the recovery at issue was subject to payment of attorneys' fees and costs as a result of the contract between the minor's guardian and attorney. Under the reasoning in *Blackburn,* this action does not seek additional payment from the plan. Therefore, removal [cannot rest] on section [1132], nor can it rest, under *Rice* [,] on section [1144].

*Id.* at *2–3. Accordingly, the district court remanded the action to state court.

 The instant case is nearly identical to *Blackburn* and *Goltz.* Herein, the Rowes were injured in a car accident and filed suit in state court against the driver of the other vehicle. Having paid for the children's medical expenses, CIC claimed an interest in any settlement fund. After reaching a settlement, the plaintiffs filed a petition with the Probate Court to approve the settlement and apportion the fund. As in *Goltz,* the Rowes sought a determination of whether CIC is entitled to part of their settlement. Similarly to the Blackburns and Goltz, the Rowes did not seek additional benefits under the benefits plan. Furthermore, neither the Rowes' lawsuit nor petition to settle the children's claims sought to clarify their rights under the terms of the plan to future benefits. Accordingly, as with the plaintiffs in *Blackburn* and *Goltz,* the Rowes have not raised claims within the scope of § 1132(a)(1)(B). Accordingly, the Rowes' claim has not been completely preempted by ERISA and cannot form a basis for removal to this Court.

### 2. ERISA, 29 U.S.C. § 1132(a)(3)

In its Petition for Removal (Doc. # 1), CIC states that this Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a)(3). CIC argues, in its memoran-

---

**22.** The defendant was Heath Cost Controls, a collection agent appointed and authorized by the plan to administer and prosecute claims of subrogation and reimbursement.

dum in opposition to remand, that "Aaron and Jessica Lynn Rowe are seeking an interpretation of the 'Health Benefits Plan' and enforcement of the provision of the same as they relate to their recovery of funds from the liability portion of Charles Rowe's insurance policy with Motorist Mutual Insurance Company." (Doc. # 7, p. 14) CIC, therefore, asserts that the Rowes are asserting a claim under § 1132(a)(3), for which this Court has exclusive jurisdiction, pursuant to § 1132(e)(1).

Section 1132(a)(3) does not provide a basis for removal in the present case. That section provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has specifically held that § 1132(a)(3)'s reference to "equitable relief" was limited to the "categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

Herein, the Rowes explicitly requested a declaratory judgment from the Probate Court as to CIC's rights to subrogation or reimbursement of the settlement proceeds. However, the Rowes' claim does not clearly seek to enforce the terms of a welfare benefits plan. In stating that CIC has no right to subrogation or reimbursement, the Narrative Statement refers to the right of subrogation under Ohio law. The Rowes do not state that CIC has no right to subrogation or reimbursement, under the terms of the welfare benefit plan. In fact, there is no reference to the plan. To the contrary, the Rowes state, in the Narrative Statement, that Community Insurance Company had not offered any basis for the amount and reason for its request for subrogation. Based on the Narrative Statement and the evidence before the Court,[23] there is no indication that CIC has stated that it is seeking subrogation under the terms of an ERISA plan. Accordingly, the Court cannot infer that the Rowes' request for declaratory judgment sought interpretation and enforcement of the plan under § 1132(a)(3), as opposed to a declaration of CIC's rights to subrogation under the general laws of Ohio. Although CIC may be able to demonstrate that the Rowes' claim is preempted by ERISA, neither the Supreme Court nor the Sixth Circuit has extended the complete preemption doctrine to claims under § 1132(a)(3).[24] Accordingly, the Rowes' claim cannot provide a basis for federal question subject matter jurisdiction or for removal of the action to this Court.

In summary, the Rowes' claims, as set forth in the Probate Court, are not preempted under 29 U.S.C. § 1132(a)(1)(B). Furthermore, the Rowes have not raised a claim under § 1132(a)(3) for which this Court has exclusive jurisdiction, pursuant to 29 U.S.C. § 1132(e)(1). Furthermore, even if the Rowes' had asserted a state law claim which is preempted under § 1132(a)(3), such a claim is not completely preempted and, therefore, cannot create federal question subject matter jurisdiction. Thus, neither § 1132(a)(1)(B) nor § 1132(a)(3) provides the Court with

---

**23.** The only properly authenticated evidence before the Court is the certified copy of the Probate Court record for Aaron Rowe. However, even if the Court were to consider the submissions by the parties, which were attached to their memoranda regarding this Motion, the Court would find no reference to ERISA or the ERISA plan.

**24.** In *Smith v. Provident Bank*, 170 F.3d 609 (6th Cir.1999), the Sixth Circuit held that a claim for breach of fiduciary duty, which falls under 29 U.S.C. § 1132(a)(2), was completely preempted, stating that "ERISA is at least as concerned with defining and standardizing the duties of a fiduciary as it is with providing for recovery of benefits." *Id.* at 613 (citing *Mertens*, 508 U.S. at 251–53, 113 S.Ct. 2063).

subject matter jurisdiction over this lawsuit. Because CIC has not demonstrated that the Court has subject matter jurisdiction over this action, the instant litigation must be remanded to state court. Plaintiff's Motion for Remand (Doc. # 4–2) is, therefore, SUSTAINED.

II. *CIC's Motion to Consolidate (Doc. # 14)*

CIC requests that this Court consolidate this action with *Community Insurance Company v. Tubbs*, Case No. C–3–98–493, also pending before the Court. Because this litigation is ordered remanded to the Preble County Probate Court, CIC's Motion to Consolidate (Doc. # 14) is OVERRULED as moot.

For the foregoing reasons, the Rowe's Motion to Dismiss (Doc. # 4–1) and CIC's Motion to Consolidate (Doc. # 14) are OVERRULED. The Rowes' Motion to Remand (Doc. # 4–2) is SUSTAINED. The captioned cause is remanded to the Preble County Probate Court from whence it cometh.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.