Christine **CALLAHAN**, Plaintiff,

v.

Michael F. **CALLAHAN**,
et al., Defendants.

No. C–3–02–158.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 25, 2002.

---

James M. Hill, O'Diam, McNamee, & Hill Co, Dayton, OH, Mark Edward Stone, Beavercreek, OH, for plaintiff.

Constantine Dino Gianuglou, Gianuglou, Skilken & Replogle, Dayton, OH, Gary William Gottschlich, Jeffrey Raiff Myers, Gottschlich & Portune, LLP, Dayton, OH, for defendant.

## DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR REMAND (DOC. # 3)

RICE, Chief Judge.

Plaintiff Christine Callahan ("Plaintiff") and Defendant Michael F. Callahan ("Callahan") were divorced by way of a Final Judgment and Decree of Divorce filed in the Montgomery County Court of Common Pleas, Domestic Relations Division, on August 13, 1997. Since that time, they have engaged in protracted post-decree litigation (See Doc. # 3). As part of the divorce settlement, Michael Callahan was required to transfer to Plaintiff the entire interest that he held in the Keymark Fund Raising, Inc., Profit–Sharing Plan ("Keymark Plan"), as of August 13, 1997 (Doc. # 1, Doc. # 3). On August 29, 1997, a Qualified Domestic Relations Order ("QDRO") was filed, which directed the Plan Administrator of the Keymark Plan to pay that amount to Plaintiff. Plaintiff alleges that Callahan's interest in the Plan was greater than the amount that she received, in accordance with that Order. On February 14, 2000, Plaintiff filed a Motion for Contempt (Doc. # 3), seeking to hold Callahan in contempt for his failure to transfer all of his interest in the Keymark Plan. On December 22, 2000, Magistrate Timothy Wood overruled Plaintiff's motion, without prejudice, indicating that "the court is unable to determine that Mr. Callahan intentionally diverted $51,000 from the profit sharing plan into his personal account to avoid paying these monies to Mrs. Callahan."

On March 27, 2001, Plaintiff renewed her Motion for Contempt and Other Matters (Doc. # 1, Ex. C) in the state domestic relations court. In response to Plaintiff's Motion, Callahan filed a Motion to Dismiss, arguing that the parties were required to arbitrate their dispute, due to an arbitration provision in the Keymark Plan; that Plaintiff had failed to state a claim upon which relief may be granted; and that Plaintiff had failed to name all parties in interest. On March 12, 2002, Magistrate Wood overruled the Motion to Dismiss. In his Decision, Magistrate Wood concluded that Defendant had waived his

right to arbitrate the dispute and that, even if he had not waived that right, Plaintiff is not subject to the arbitration clause. The Court agreed with Callahan that the Keymark Plan and its Plan Administrator, Defendant Keymark Fund Raising, Inc. ("Keymark"), were necessary parties to the action. The Magistrate therefore ordered that those entities be joined. On March 19, 2002, Keymark was joined as a party-defendant.

On April 8, 2002, Keymark removed the action to this Court, alleging that Plaintiff seeks recovery of the proceeds of a benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Keymark further argues that the issue of this action is not the interpretation of the QDRO but, rather, the value of Callahan's interest in the Plan. It asserts that the Keymark Plan documents indicate that the determination of the value of a participant's interest is vested exclusively with the Plan Administrator.

Pending before the Court is Plaintiff's Motion for Remand (Doc. # 3).[1] For the reasons assigned, Plaintiff's Motion is OVERRULED.

The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds

its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn,* 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.,* 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

In her Motion, Plaintiff argues that removal of this action to this Court was improper on four grounds. *First,* she contends that the removal was defective, because not all defendants (*i.e.,* Callahan) joined in the removal. *Second,* she asserts that the Notice of Removal was not timely filed. *Third,* Plaintiff argues that her claims are not completely preempted by ERISA. *Fourth,* she asserts that the Court should remand this action, based on the doctrine of abstention.

### A. *Consent of All Defendants in Removal*

*First,* Plaintiff asserts that remand is required, because Callahan did not join in or consent to the removal. Section 1446(a) of 28 U.S.C. requires that "[a] defendant or defendants desiring to remove any civil action … shall file … a notice of removal." Despite the ambiguity of the term "defendant or defendants," it is well established that removal generally requires unanimity among the defendants.

---

1. Also pending before the Court is Keymark's Motion to Compel Arbitration (Doc. # 2–1) and its Motion to Stay Proceedings (Doc. # 2–2). On May 10, 2002, Plaintiff filed a Motion for Extension of Time to file an Opposition Memorandum (Doc. # 4). The Court sustained Plaintiff's Motion by Notation Order, and granted her fourteen (14) days from the Court's decision on the Motion for Remand to file her Opposition Memorandum. Accordingly, Keymark's Motion is not ripe for determination at this time.

*Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3rd Cir.1995), citing *Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 247, 20 S.Ct. 854, 44 L.Ed. 1055 (1900)("[I]f a suit arises under the Constitution or laws of the United States, or if it is a suit between citizens of different states, the defendant, if there be but one, may remove, or the defendants, if there be more than one. . . ."). As stated by the Sixth Circuit: "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n. 3 (6th Cir.1999).

In its Notice of Removal, Keymark states: "The other defendant in the action, Michael Callahan, has agreed to the removal effected by this notice." (Doc. # 1 ¶ 9). Although the Notice of Removal was signed only by Keymark's counsel, this statement indicates that Callahan intended to consent to Keymark's removal of the action. In addition, to the extent that any procedural defect occurred, Defendants have cured that deficiency by the filing of an Amended Notice of Removal on June 24, 2002 (Doc. # 12). *See Gafford v. General Elec. Co.*, 997 F.2d 150, 164 (6th Cir. 1993) (holding that "a petition for removal may be amended under the same considerations governing the amendment of any other pleading containing jurisdictional allegations"); *Klein v. Manor Healthcare Corp.*, 1994 WL 91786, n. 8 (6th Cir. Mar.22, 1994)(applying the reasoning in *Gafford* to permit the defendants to cure a procedural deficiency in the Notice of Removal). In their Amended Notice, Defendants submit the affidavits of Michael Callahan and his counsel, C. Dino Gianuglou, in which they state that Callahan agrees and consents to removal. Accordingly, the Court concludes that all Defendants have consented to removal of this action and that any alleged defect in this regard has been cured. Plaintiff's Motion for Remand, on the ground that not all Defendants have joined in or consented to removal, is OVERRULED.

**B.** *Timeliness of Removal*

■ *Second,* Plaintiff argues that Defendants have failed to comply with the time limitations for removal, set forth in 28 U.S.C. § 1446. Under that statute,

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, expect that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity of citizenship] more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). Plaintiff argues that Defendants have failed to comply with the thirty (30) day deadline for removal.

In support of her argument, Plaintiff asserts that Callahan holds a 72% ownership interest in Keymark, is the president of Keymark and, at all relevant times, has been actively involved in conducting its

business. She further notes that her original motion for contempt was filed on February 14, 2000, and renewed on March 27, 2001, alleging the same basis for relief as the amended motion filed on March 19, 2002. Plaintiff claims that, by virtue of Callahan's position with Keymark in the year 2000, the company was on notice no later than February 14, 2000, that potentially removable federal claims were being pursued by her. Thus, Plaintiff argues, the window for seeking removal opened no later than February 14, 2000.

Defendants respond that Keymark was not a named party until March 19, 2002. Thus, the removal period did not commence until it was served with notice that it was a party-defendant. They further assert that notice to Michael Callahan in his individual capacity is not notice to the company regarding the removability of the action. The Court agrees with Defendants.

The 30–day period for removal runs from the service of the summons on each defendant. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). "In cases with multiple defendants served at different times, a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants." *Campbell v. R.D. Johnson*, 1999 WL 1253098 (6th Cir. Dec.17, 1999); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir.1999), *cert. denied*, 528 U.S. 1076, 120 S.Ct. 790, 145 L.Ed.2d 667 (2000). "It is axiomatic that a non-party has no right to remove the litigation from state court to federal court." *Community Ins. Co. v. Rowe*, 85 F.Supp.2d 800, 809 (S.D.Ohio 1999) (Rice, C.J.). In the present case, Keymark did not become a party to the action under March 19, 2002. Consequently, Keymark could not have removed the case prior to

that time. Defendants' Notice of Removal was filed on April 8, 2002, twenty (20) days after Keymark was made a party-defendant. Accordingly, their removal of the action to this Court was timely. Plaintiff's Motion for Remand, based on untimeliness, is OVERRULED.

### C. *ERISA Preemption*

Plaintiff contends that this Court lacks subject matter jurisdiction over her claim, because it is not completely preempted by ERISA. She asserts that, as an alternate payee, she is not a party authorized by ERISA to bring an ERISA claim. Plaintiff further argues that she is not seeking an interpretation of federal law but, rather, only seeks to enforce provisions contained in the underlying Final Judgment and Decree of Divorce. She argues that the ERISA claims, if any, are ancillary to the Plaintiff's underlying state law claim, *i.e.*, enforcement of the Final Judgment and Decree of Divorce.

Defendants respond that the valuation and determination of benefits from the Keymark Plan must be made in accordance with plan documents, which are governed by ERISA. They argue that the dispute is not what the QDRO ordered but, rather, Keymark's compliance with ERISA as to its determination regarding the valuation of Callahan's interest in the Plan. Defendants contend that Plaintiff's status as an alternate payee confers the status of a beneficiary on her and, therefore, she is subjected to the directives of the Plan. Thus, they argue, Plaintiff's claim falls under 29 U.S.C. § 1132(a).

There are two aspects to federal preemption of state law: conflict preemption and complete preemption. Conflict preemption arises where compliance with both federal and state law is a physically impossible, or "where state law stands as an obstacle to the accomplish-

ment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see Warner v. Ford Motor Co.*, 46 F.3d 531, 533 (6th Cir.1995)(en banc)(discussing difference between conflict and complete preemption). In contrast, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted." *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner*, 46 F.3d at 533. If the plaintiff's claim arises under state law, the mere assertion of federal preemption as a defensive argument, *i.e.*, a conflict preemption situation, will not confer federal question subject matter jurisdiction. As stated by the Supreme Court in *Metropolitan Life Ins. Co. v. Taylor*,

Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this se-

lect group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. 1542. The Supreme Court has found that Congress intended to make causes of action within the scope of 29 U.S.C. § 1132(a)(1)(B), which allows plan participants or beneficiaries to bring a civil action to recover benefits due to him under the plan, either to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan, removable to federal court under the doctrine of complete preemption. *Id.* at 66, 107 S.Ct. 1542. The Sixth Circuit has recognized that actions brought under §§ 1132(a)(2) and (3) are also removable. *Smith v. Provident Bank*, 170 F.3d 609 (6th Cir.1999). However, causes of action which raise conflict preemption are not removable.

The [Supreme] Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life*, at 54, 107 S.Ct. at 1547. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner*, 46 F.3d at 534. Accordingly, this Court must determine whether Plaintiff has raised claims within the scope of Section 1132(a), which are completely preempted, or whether Defendants' arguments are merely assertions of conflict preemption, which cannot form the basis for removal.

As an initial matter, the Court must determine whether Plaintiff is an appropriate ERISA plaintiff. In *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), the Supreme Court answered in the affirmative:

ERISA confers beneficiary status on a nonparticipant spouse or dependent in only narrow circumstances delineated by its provisions. For example, as we have discussed, § 1055(a) requires provision of a surviving spouse annuity in covered pension plans, and, as a consequence, the spouse is a beneficiary to this extent. Section 1056's QDRO provisions likewise recognize certain pension plan community property interests of nonparticipant spouses and dependents. A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. § 1056(d)(3)(B)(i). A domestic relations order, in turn, is any judgment, decree, or order that concerns "the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is "made pursuant to a State domestic relations law (including a community property law)." § 1056(d)(3)(B)(ii). A domestic relations order must meet certain requirements to qualify as a QDRO. See §§ 1056(d)(3)(C)-(E). QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general pre-emption clause, § 1144(b)(7). In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J).

*Id.* at 846–47, 117 S.Ct. 1754. Plaintiff, as an alternative payee of Callahan's interest in the Keymark Plan under a QDRO, is clearly a "beneficiary" within the meaning of ERISA.

Turning to Plaintiff's claim, the Court would normally begin with an evaluation of a well-pleaded complaint. However, no complaint is present in this litigation. As stated, *supra,* Plaintiff characterizes her claim as "Michael Callahan intentionally transferred to his ex-wife an amount less than the amount his ex-wife had been awarded pursuant to the parties['] final decree." (Doc. # 3 at 7). Although Plaintiff emphasizes that this right arises out of a QDRO, the essence of this action is to determine the amount that Plaintiff was entitled to receive from the Keymark Plan, *i.e.,* the monetary value of the entire interest that Callahan held in the Keymark Plan on August 13, 1997. In other words, Plaintiff is seeking "to recover benefits due to [her] under the terms of [the] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff's claim falls within the scope of § 1132(a) and, consequently, it is completely preempted. Accordingly, this Court has subject matter jurisdiction over her claim.

### D. *Abstention/ Domestic Relations Exception*

*Fourth,* Plaintiff argues that this Court should remand, based on abstention doctrines. She asserts that permitting the removal of this post-divorce decree enforcement action will be an invitation to others to turn federal courts into "super divorce" courts (Doc. # 3 at 7).

In 1859, the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 21

How. 582, 16 L.Ed. 226 (1859). The exception was later expanded to include child custody cases. *In re Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). More recently, the Supreme Court reaffirmed that the domestic relations exception to jurisdiction "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards,* 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). Herein, Plaintiff's action is not one specifically for divorce, alimony, or child custody. Accordingly, the domestic relations exception does not apply.

Turning to abstention, the Supreme Court has repeatedly stated that "abstention from jurisdiction is the exception, not the rule, and that federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635 (6th Cir.1990)(quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress"). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where ... [it] would clearly serve an important countervailing [state] interest." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236.

In *Ankenbrandt,* the Supreme Court refused to apply either the *Younger*[2] or *Burford*[3] abstention doctrines to a case which involved a parent's action against a former spouse. Therein, a mother brought suit on behalf of her children against her former husband and his female companion, alleging that they had sexually and physically abused the children and seeking monetary damages for the abuse. The district court dismissed the action, on the ground that it fell within the domestic relations exception and, alternatively, that abstention was appropriate. The court of appeals affirmed. Upon review, the Supreme Court reversed, indicating that no pending state proceeding was pending and, therefore, abstention under *Younger* principles was inappropriate. Turning to *Burford,* the Court noted that abstention might be appropriate if the "federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree,

---

**2.** The abstention doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) imposes heightened requirements for an injunction to restrain an already-pending or an about-to-be-pending state criminal action, or a civil action involving important state interests. *See generally Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 431–432, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

**3.** The doctrine set forth in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) doctrine is appropriate in two instances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administra-

tive agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S., at 814, 96 S.Ct., at 1245 [(summarizing *Burford* abstention doctrine)].

491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *see MacDonald v. Village of Northport, Mich.,* 164 F.3d 964 (6th Cir. 1999).

and the suit depended on a determination of the status of the parties." 504 U.S. at 706, 112 S.Ct. 2206. The Court concluded that *Burford* did not apply therein, because the status of the domestic relationship had been determined as a matter of state law, and the parties' status had no bearing on the underlying torts alleged. *Id.* The Court therefore concluded that "[b]ecause the allegations in this complaint do not request the District Court to issue a divorce, alimony, or child custody decree, we hold that the suit is appropriate for the exercise of § 1332 jurisdiction." *Id.* at 706–07, 112 S.Ct. 2206.

In a case similar to the one presented herein, the Sixth Circuit has also concluded that abstention is improper. In *Rouse v. DaimlerChrysler Corp. UAW Non–Contributory Plan,* 300 F.3d 711 (6th Cir. 2002), the plaintiff successfully petitioned the domestic relations court to modify retroactively her 1984 divorce settlement via a domestic relations order. The modified order gave her survivorship benefits in her deceased ex-husband's pension. The pension plan removed the action to federal court, arguing that the domestic relations order was invalid under ERISA. The district court concluded that the domestic relations order required the parties to resolve all issues about the order's validity in state court, and, relying on *Burford,* it stayed the federal suit pending the state court's decision.

The Sixth Circuit reversed, reasoning that the issue before the district court was strictly federal in nature, *i.e.,* whether the Domestic Relations Order created any obligations under ERISA, and that review did not require it to meddle in state domestic relations law or interfere with state domestic relations policies. 300 F.3d at 716. The court specifically noted that sta-

tus of the plaintiff's domestic relationship with her ex-husband had already been determined when she obtained the Domestic Relations Order in state court. Because the Plan's claim contested only the validity of the Domestic Relations Order under ERISA, abstention by the federal court was inappropriate.

Turning to the instant action, abstention is likewise inappropriate.[4] The status of Plaintiff's relationship with Callahan has already been determined by the domestic relations court. They have obtained a Final Judgment and Decree of Divorce and a QDRO. The issue before the Court is the determination of the amount that Plaintiff was entitled to receive from the Keymark Plan, *i.e.,* the monetary value of the entire interest that Callahan held in the Keymark Plan on August 13, 1997. Because the Plan is governed by ERISA, this claim is federal in nature. Moreover, a resolution of this issue will not implicate state domestic relations law or interfere with state domestic relations policies. Accordingly, the Court concludes that abstention is inappropriate.

For the foregoing reasons, Plaintiff's Motion for Remand (Doc. # 3) is OVERRULED. Plaintiff is granted fourteen (14) days to file an Opposition Memorandum to Defendant's Motion to Compel Arbitration (Doc. # 2–1) and to Stay Proceedings (Doc. # 2–2). Defendants are granted fourteen (14) days to respond to Plaintiff's filing.

---

**4.** The Court notes that Plaintiff did not identify upon which abstention doctrine she is bas-

ing her argument.